UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:25-cv-07523-AB-SSC | Date: | August 19, 2025 |
|---|---|---|---|

| Title: | *Alexander Douglas Plank v. SAG-AFTRA* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER <u>DENYING</u> PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED HEARING ON PRELIMINARY INJUNCTION [Dkt. No. 4]**

Before the Court is Plaintiff Alexander Douglas Plank's ("Plaintiff") August 13, 2025 Ex Parte Motion for Temporary Restraining Order and for Expedited Hearing on Preliminary Injunction ("Ex Parte Application," Dkt. No. 4). On August 15, 2025, Defendant SAG-AFTRA ("Defendant") filed a memorandum in opposition to Plaintiff's Ex Parte Application ("Opposition," Dkt. No. 13). Plaintiff's Ex Parte Application is **<u>DENIED</u>**.

### I. BACKGROUND

Defendant is a national labor organization representing more than 160,000 members, including actors, broadcasters, recording artists, and other media professionals. Opp'n at 2. In 2025, Defendant held its seventh biennial election to select national officers, national Board members, local officers, local Board members, and Convention Delegates. *Id*. at 3. As part of the election process,

Defendant and a third-party independent election firm, Integrity Voting Systems ("IVS"), prepared and mailed a ballot package to eligible members. This ballot package included a Voter Information Guide that contained a headshot and a brief candidate statement for all individuals running for election. *Id.* at 1-5.

Plaintiff was one of the candidates in the 2025 election, running for positions as a Convention Delegate and on the LA Local Board. *Id.* at 2. In accordance with Defendant's election policies, Plaintiff submitted a photograph for inclusion in the Voter Information Guide. Plaintiff's original photograph included both himself and his service animal. Compl. at ¶ 6, Dkt. No. 1.

On August 8, 2025, Plaintiff states he discovered the proposed Voter Information Guide altered his original photograph, cropping out his service animal. Compl. at ¶ 7. In email correspondence with the Defendant, Plaintiff raised his objection to the use of the cropped photograph and requested Defendant use his original photograph. Compl. at ¶ 9. Defendant claims they notified the Plaintiff that the original photograph was cropped to comply with internal rules for headshots included in the Voter Information Guide. Opp'n at 7. On August 12, 2025, Defendant informed Plaintiff that the Voter Information Guides were to be mailed on August 13, 2025. Compl. at ¶ 10.

On August 13, 2025, Plaintiff filed the Complaint and Ex Parte Application alleging Defendant violated his rights under the Americans with Disabilities Act ("ADA"), the 14th Amendment of the U.S. Constitution, and California state law. Plaintiff asks this Court to (1) enjoin Defendant from publishing, mailing, or distributing any member guide or materials containing the altered photograph, (2) require Defendant to preserve and produce the original photograph files, editing logs, communications, and production materials related to the Voter Information Guide, and (3) expedite discovery. For the reasons below, Plaintiff's Ex Parte Application is denied.

## II.  LEGAL STANDARD

Ex parte applications are solely for extraordinary relief and are rarely granted. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995). Such applications are "inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system." *Id.* at 490. Accordingly, ex parte relief is warranted only where the movant shows two things:

> First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

*Id*. at 492.

A temporary restraining order ("TRO") is a kind of ex parte application, so the moving party must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words . . . the moving party [must show why it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Id.* (explaining that the applicant for ex parte relief must demonstrate urgency and that it is without fault in creating the urgency). To establish this, the movant must show that it will be irreparably harmed if the usual schedule is adhered to, and that it did not cause the crisis that necessitates ex parte relief. *Id.*

### III.    DISCUSSION

**1. Plaintiff's Ex Parte Application is Procedurally Deficient.**

Plaintiff failed to follow the required local rules when filing his Ex Parte Application. As per Local Rule 7-19.1, Plaintiff was required to orally "advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application" and "advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." Plaintiff failed to provide the required written notice to this Court on his good faith efforts to advise opposing counsel, making his Ex Parte Application procedurally deficient.

Additionally, Plaintiff's Ex Parte Application was rendered moot once Defendant mailed the ballot package. An issue is moot "if an event occurs that prevents the court from granting effective relief." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). Plaintiff filed his Ex Parte Application the same day Defendant mailed the ballot packages, which included the cropped photograph, to its members. Defendant claims that the first ballot packages were mailed at approximately 12:24 pm on August 13, nine minutes after Plaintiff filed his Ex Parte Application, and that the remaining ballot packages were mailed within the next four hours. Opp'n at 8. Defendant was not even made

aware of the Plaintiff's action until late in the afternoon, once Plaintiff emailed the details to the Defendant. *Id.* Since Defendant has already mailed the ballot package, this Court is unable to enjoin the Defendant from mailing the ballot packages, as requested by Plaintiff. As the Court is unable to grant effective relief, the Ex Parte Application has been rendered moot. Accordingly, Plaintiff's Ex Parte Application is denied.

### 2. Plaintiff's Ex Parte Application Fails to Meet the Substantive Burden for a Ex Parte TRO.

As an initial matter, Plaintiff failed to demonstrate that relief should be granted on an ex parte basis. Courts have recognized that there are "very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). In the present case, Plaintiff has shown neither that he will be irreparably prejudiced if the underlying TRO is heard according to regular noticed motion procedures nor that that the alleged harm occurred because of neglect. Therefore, Plaintiff is not entitled to ex parte relief.

The Plaintiff's Ex Parte Application also fails on the merits as the Plaintiff has failed to adequately prove the required elements for a TRO. A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). The purpose of a preliminary injunction, in turn, is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

The standard for a TRO is similar to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). To obtain a TRO or a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted). Alternatively, where there are merely "serious questions going to the merits," the moving party may still obtain a preliminary injunction where the balance of hardships "tips sharply" in the moving party's favor, and where the moving party also shows a likelihood of

irreparable injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In the present case, Plaintiff has failed to establish any of the required elements to obtain a TRO. While the Ex Parte Application claims that (1) Plaintiff is likely to succeed on the merits, (2) Plaintiff will suffer irreparable harm, (3) the balance of hardships favors the Plaintiff, and (4) the public interest favors the Plaintiff, Plaintiff has provided no support to any of these claims. Plaintiff's Ex Parte Application is barebones, at best. Plaintiff has provided few details as to why the TRO should be granted and has only stated broad, legal allegations in support of his application. Plaintiff has not met his burden for a TRO in the Ex Parte Application. Therefore, it is denied.

## IV.  CONCLUSION

For the above reasons, Plaintiff's Ex Parte Application is **DENIED**.

**IT IS SO ORDERED**.