1  Alexander Douglas Plank

2  c/o Arise Artists Agency

3  PO Box 930

4  Manhattan Beach, CA 90267

5  Phone: (703) 966-8504

6  Email: alex@alexplank.com

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10  ALEXANDER DOUGLAS PLANK,            Case No. 2:25-cv-07523-AB-SSCx

11                          Plaintiff,
                                        **PLAINTIFF'S REPLY IN SUPPORT
12       v.                             OF MOTION FOR PRELIMINARY
                                        INJUNCTION**
13  SAG-AFTRA,
                                        **Hearing Date:** September 26,
14                          Defendant.  2025
                                        **Time:** 10:00 a.m.
15                                       **Judge:** Hon. André Birotte Jr.
                                        **Courtroom:** 7B
16

17

18

19

20

21

22

23

24

25

26

27

28

1

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

## **TABLE OF CONTENTS**

2  TABLE OF CONTENTS.............................................................................. 2

3  TABLE OF AUTHORITIES......................................................................... 2

4  INTRODUCTION ....................................................................................... 5

5  I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.............................. 6

6  A. Defendant Concedes the Policy and Its Application; the Issue Is Reasonable

7  Modification ........................................................................................ 6

8   B. Plaintiff Seeks Prohibitory Relief Squarely Within the Scope of the Complaint ... 7

9   C. Plaintiff Has Standing to Seek Injunctive and Declaratory Relief ........................ 8

10   D. Coverage Is Clear Under Title I; Title III Is an Alternative Ground ..................... 9

11  II. PLAINTIFF FACES ONGOING AND IRREPARABLE HARM ........................ 9

12   A. Civil Rights Violations Are Presumptively Irreparable ...................................... 10

13   B. The Harm Is Ongoing .......................................................................... 11

14   C. Damages Are Inadequate to Remedy the Injury .................................................... 12

15  III. BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY

16      FAVOR THE INJUNCTION ....................................................................... 12

17  IV. THE UNIFORMITY DEFENSE FAILS ................................................... 13

18   A. Neutral Rules Cannot Justify Disparate Exclusion ............................................... 13

19   B. Service Animals Are Legally Distinct from Pets .................................................. 13

20   C. Defendant's Practices Undermine Its Claim of Uniformity ................................ 13

21  V. EXHAUSTION DOES NOT BAR PRELIMINARY RELIEF ........................... 14

22   A. This Case Is Not a Conventional Employment Claim ........................................ 15

23   B. Exhaustion Is a Claim-Processing Rule, Not Jurisdictional ............................... 15

24   C. Administrative Agencies Cannot Grant the Relief Sought ............................... 15

25   D. ADA Claims Against Unions Proceed Independently ....................................... 16

26  CONCLUSION................................................................................... 18–19

27  CERTIFICATE OF COMPLIANCE ......................................................... 20

28

2

1

## **TABLE OF AUTHORITIES**

2 **Cases**

3 *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004 (9th Cir. 2001) ...................... 18

4 *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ......................................................... 7

5 *Araya v. Gawker Media, No*. 3:12-cv-00128-FDW-DSC, 2012 WL 1496205

6 (W.D.N.C. Apr. 27, 2012) ...................................................................................... 12

7 *Baughman v. Walt Disney World Co*., 685 F.3d 1131 (9th Cir. 2012) ......... 6–7, 17–18

8 *Chalk v. U.S. Dist. Ct*., 840 F.2d 701 (9th Cir. 1988) .................................................. 10

9 *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) ............................. 6–7, 12, 16–17

10 *EEOC v. Day & Zimmerman NPS, Inc*., 265 F. Supp. 3d 179 (D. Conn. 2017) ... 14-17

11 *Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................... 10

12 *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019) ....................................................... 15

13 *Fortyune v. AMC, Inc*., 364 F.3d 1075 (9th Cir. 2004) ........................................ 10, 17

14 *Garity v. Am. Postal Workers Union, Nat'l Labor Org*., 828 F.3d 848 (9th Cir. 2016)

15 ................................................................................................................................. 16

16 *Gilliam v. ABC*, 538 F.2d 14 (2d Cir. 1976) ............................................................. 9, 11

17 *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ....................................... 7, 14

18 *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512 (W.D. Tex. 2022) ... 14,19

19 *League of Women Voters of Fla., Inc. v. Lee*, 595 F. Supp. 3d 1042 (N.D. Fla. 2022)

20 .......................................................................................................................... 14, 19

21 *Loper Bright Enterprises v. Raimondo, No. 22-451, slip op. (U.S. June 28, 2024)*.... 17

22 *Lucas v. AFGE*, 90 F.4th 123 (D.C. Cir. 2025) .......................................................... 16

23 *Montoro v. Warner Bros*. Pictures, Inc., 749 F.2d 1372 (9th Cir. 1984) ............... 9, 11

24 *Nolen v. PeopleConnect, Inc*., No. 21-cv-00485-EMC, 2023 WL 8879286 (N.D. Cal.

25 Dec. 22, 2023) ........................................................................................................ 12

26 *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr*., 810 F.3d 631 (9th Cir. 2015)

27 ................................................................................................................................... 8

28 *Perez v. Sturgis Pub. Schs*., 598 U.S. 142 (2023) ..................................................... 15

3

1   *Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) .......................................... 18–19

2   *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911) ............................... 8, 11, 12

3   *Whitaker v. Starbucks Corp.*, 30 F.4th 617 (9th Cir. 2022) ...................................... 17

4   **Statutes**

5   Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ..................... 5–17

6   Cal. Civ. Code §§ 54–54.2 (California Disabled Persons Act) ................................. 12

7   Cal. Gov. Code § 12940(b) (FEHA) ................................................................. 12, 13–15

8   **Code**

9   28 U.S.C. § 1367(a)............................................................................................... 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

**INTRODUCTION**

2          Plaintiff's Motion presented a straightforward issue: Defendant admits it

3   enforces a "no animals in photos" policy and cropped Plaintiff's official headshot

4   accordingly. The only question is whether the ADA and parallel California statutes

5   require a reasonable modification of that rule where, as here, the policy uniquely

6   burdens a disabled member's equal participation. They do.

7          Defendant's Opposition does not dispute the existence of the policy or its

8   application to Plaintiff. Instead, it raises threshold objections—mootness, exhaustion,

9   and claimed uniformity— that are not supported by controlling law. The cropped

10  image remains published and viewed online, creating ongoing harm. Service animals

11  are not equivalent to pets; the "uniform" rule operates disparately in practice. And the

12  accommodation required is trivial: use of the unaltered photograph already in

13  Defendant's possession. The Court need not reach broad constitutional questions or

14  weigh speculative equities. The record now presents a narrow legal issue with a

15  simple remedy. Under binding precedent, neutral policies must yield where a minor

16  adjustment avoids exclusion. That is this case.

17         Notably, Defendant's Opposition abandons the procedural objections it pressed

18  previously and narrows its description of the challenged policy. This only underscores

19  that the case now turns on a single question: whether the law requires a reasonable

20  modification of Defendant's cropping rule as applied to a service animal.

21         Defendant characterizes the relief sought as a "mandatory" injunction, but that

22  framing is inaccurate. The requested order would simply restrain Defendant from

23  continuing to enforce its cropping policy in a discriminatory way and require it to use

24  the unaltered photograph already in its possession. Such relief is prohibitory in nature

25  and consistent with settled ADA precedent. It preserves the status quo by restraining

26  application of a neutral rule in a way that uniquely burdens a disability

27  accommodation. The remedy aligns with the Complaint's prayer for injunctive and

28  declaratory relief and does not expand the case. (Compl. ¶13; Prayer for Relief ¶¶ A,

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  F, Dkt. 1 at 6).

2  **I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS**

3  Defendant admits the existence and application of a policy requiring candidate

4  photos to be cropped as "headshots." The only question before the Court is whether

5  applying that rule to exclude a service animal violates the ADA and parallel state

6  civil-rights statutes. Under settled precedent, it does.

7  In *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), the Ninth Circuit held

8  that a facially neutral rule that disproportionately burdens persons with disabilities

9  must be modified under the ADA. In *Baughman v. Walt Disney World Co*., 685 F.3d

10  1131 (9th Cir. 2012), the Court emphasized that the ADA "requires more than treating

11  the disabled and nondisabled alike — it requires accommodations that are reasonable

12  and necessary to ensure meaningful access."

13  Here, the modification is obvious and minimal: accept and publish the

14  photograph already submitted. This imposes no cost, no administrative burden, and no

15  safety risk. It simply prevents the discriminatory effect of cropping out Plaintiff's

16  service animal, which is a recognized accommodation under federal law. Accordingly,

17  Plaintiff has established a strong likelihood of success on the merits.

18  The record confirms this disparity: other members' photographs appear

19  consistent, while Plaintiff's was cropped and distorted. See Plank Supp. Decl. ¶¶ 3–4.

20  Coalition partner materials demonstrate that Plaintiff's authentic photo is easily usable

21  without disruption, underscoring that the only barrier is Defendant's policy. See id. ¶¶

22  16–19 & Ex. B.

23  **A. Defendant Concedes the Policy and Its Application; the Issue Is Reasonable**

24  **Modification**

25  Defendant does not dispute that it maintains a "no animals in photos" policy

26  and that, pursuant to that policy, it cropped Plaintiff's official election photograph to

27  remove his service animal. See Opp'n at 27. That concession resolves any factual

28  dispute about what occurred. The sole issue before this Court is whether the

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  controlling statutes require a reasonable modification of that policy when, as here, the

2  rule disproportionately burdens disabled members.

3      The governing law is clear: neutral policies cannot be applied inflexibly where

4  they exclude persons with disabilities from meaningful participation. In *Crowder v.*

5  *Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), Hawaii's dog-quarantine rule was neutral on

6  its face but had a disproportionate effect on blind persons using guide dogs. The Ninth

7  Circuit required modification of the rule. Similarly, in *Baughman v. Walt Disney*

8  *World Co*., 685 F.3d 1131 (9th Cir. 2012), the court rejected a blanket ban on mobility

9  devices, holding that the ADA 'requires more than treating the disabled and

10  nondisabled alike. It requires accommodations that are reasonable and necessary to

11  ensure meaningful access.'

12      The modification required here is both obvious and minimal: accept and publish

13  the unaltered photograph that Plaintiff already submitted. This imposes no cost, no

14  administrative disruption, and no safety risk. By Defendant's own concession of its

15  policy and its application, the record is narrow, the remedy straightforward, and the

16  case turns on a single question of law. See *Henrietta D. v. Bloomberg*, 331 F.3d 261,

17  277–78 (2d Cir. 2003) (plaintiffs need not prove disparate impact; injunctive relief

18  appropriate where denial of meaningful access shown); *Trivette v. Tenn. Dep't of*

19  *Corr*., 2024 WL 3366335, at *6 (M.D. Tenn. June 18, 2024) (injunctive relief ordered

20  where failure to accommodate denied deaf inmates meaningful access). Defendant's

21  reliance on Alexander v. Choate is misplaced. That case confirms that "meaningful

22  access" is required — exactly what is denied here. See *Alexander v. Choate*, 469 U.S.

23  287, 301 (1985) ("the benefit itself cannot be defined in a way that effectively denies

24  otherwise qualified handicapped individuals the meaningful access to which they are

25  entitled").

26  **B. Plaintiff Seeks Prohibitory Relief Squarely Within the Scope of the Complaint**

27      Defendant's assertion that Plaintiff now seeks "relief far beyond the Complaint"

28  is incorrect. The Complaint alleges that Defendant's "cropping" policy violates the

7

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  ADA and related statutes and seeks injunctive and declaratory relief to remedy that

2  violation. (Compl., Dkt. 1) The PI Motion seeks the same relief: to prevent

3  enforcement of a "no animals" rule in a manner that erases a service animal from

4  official photographs. This is the precise conduct alleged in the Complaint, and

5  therefore falls squarely within the "same character" rule recognized in *Pacific*

6  *Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).

7  Unlike in *Pac. Radiation*, where the preliminary injunction targeted conduct absent

8  from the pleadings, Plaintiff's request addresses the very policy and injury pled. That

9  the 2025 Voter's Guide has been mailed does not moot the controversy, because the

10  challenged policy is ongoing and "capable of repetition, yet evading review."

11  *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

12        Defendant's reliance on *Pac. Radiation* is misplaced. That case bars

13  preliminary relief where the injunction addresses matters never pled. Here, by

14  contrast, Plaintiff's Complaint pleads ADA and state-law claims and expressly seeks

15  injunctive relief "enjoining Defendant from publishing, mailing, or distributing any

16  member guide or materials containing the altered photograph of Plaintiff (or requiring

17  correction)" as well as declaratory relief. (Compl. ¶13; Prayer for Relief ¶¶ A, F, Dkt.

18  1 at 6). The PI Motion requests the same type of injunctive and declaratory relief—

19  relief of the "same character" permitted under *Pacific Radiation*.

20        The requested relief is squarely within the scope of the Complaint. Count I

21  alleges ADA discrimination where Defendant's cropping policy "denies Plaintiff

22  equal access to services, programs, or activities provided by Defendant and/or

23  constitutes employment-related discrimination by a labor organization," and Plaintiff

24  seeks injunctive and declaratory relief. (Compl. ¶13; Prayer for Relief ¶¶ A, F, Dkt. 1

25  at 6). Defendant's characterization of the PI as "new" relief ignores the fact that the

26  Complaint pled both injunctive and declaratory relief targeting the cropping policy

27  itself.

28  **C. Plaintiff Has Standing to Seek Injunctive and Declaratory Relief.**

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    Plaintiff faces a concrete, ongoing injury from the continued application of the

2    cropping policy: exclusion of his service animal from official union imagery in the

3    Guide and related records. The injury is traceable to Defendant's policy and

4    redressable by an order forbidding that application and requiring use of the unaltered

5    photograph. Standing is satisfied.

6    Plaintiff satisfies Article III standing: (1) injury in fact, because his official

7    image is distorted and stigmatizing; (2) traceability, because the harm flows directly

8    from Defendant's cropping policy; and (3) redressability, because an injunction

9    requiring Defendant to use the unaltered photograph would remedy the harm.

10   **D. Coverage Is Clear Under Title I; Title III Is an Alternative Ground.**

11   As a labor organization, Defendant is a covered entity under the ADA, and it

12   must reasonably modify policies to ensure meaningful access. The requested

13   injunction concerns the union's own communications and records—core union

14   functions—so the Court need not resolve any separate "public accommodation"

15   question to grant relief. In the alternative, the same narrow modification is proper

16   under Title III because the Guide is the conduit to equal participation and benefits.

17   **II. PLAINTIFF FACES ONGOING AND IRREPARABLE HARM**

18   Defendant argues the case is moot because the Voter Guide has already been

19   mailed. That is wrong. The Guide remains in circulation, is referenced by colleagues

20   and press, and continues to reflect the cropped image. Moreover, Defendant has

21   conceded the policy will apply in future guides. A live controversy remains.

22   As detailed in Plaintiff's Supplemental Declaration (¶¶ 6–7), the policy has

23   already deterred his participation in union activities, including avoidance out of

24   embarrassment. Courts have long recognized that reputational and identity distortion

25   are irreparable. See *Gilliam v. ABC*, 538 F.2d 14 (2d Cir. 1976); *Montoro v. Warner*

26   *Bros. Pictures, Inc.*, 749 F.2d 1372, 1377–78 (9th Cir. 1984). As in those cases, once

27   Plaintiff's official image is altered and disseminated, the stigma cannot be undone.

28   Defendant contends that Plaintiff suffers no irreparable harm because he was

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    otherwise able to participate in the election and because the Guide has already been

2    distributed. Both arguments fail. Plaintiff's cropped photo continues to circulate in

3    Defendant's official Guide, while his authentic photograph appears unaltered in

4    Coalition materials. See Plank Supp. Decl. ¶¶ 16–19 & Ex. B (Coalition mailing

5    displaying Plaintiff's authentic photograph). This disparity confirms that the harm is

6    stigmatic, ongoing, and attributable solely to Defendant's policy. No later remedy—

7    monetary or otherwise—can restore equal participation already lost, or remove the

8    stigma that persists each time the Guide is consulted.

9         Defendant suggests there is no evidence of concrete harm. That is incorrect.

10    Plaintiff has provided sworn testimony of specific, recent instances where the

11    cropping policy caused him to withdraw from union activity and refrain from sharing

12    materials. See Plank Supp. Decl. ¶¶ 5–7. The injury is not speculative; it is

13    documented, ongoing, and irreparable. Nor can Defendant's argument that textual

14    references to Plaintiff's service dog cure the harm carry weight. As the Supplemental

15    Declaration confirms, visual exclusion imposes a stigma distinct from text, and once

16    disseminated in official materials, that distortion cannot be undone. See id. ¶¶ 11–15.

17    **A. Civil Rights Violations Are Presumptively Irreparable**

18         The Supreme Court has long held that the loss of constitutional or statutory civil

19    rights "for even minimal periods of time, unquestionably constitutes irreparable

20    injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Ninth Circuit applies that

21    principle to ADA cases: stigmatic exclusion and denial of meaningful access are

22    harms that cannot be compensated after the fact. *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701,

23    709 (9th Cir. 1988) (finding irreparable harm where exclusion from the workplace

24    conveyed stigma and isolation). See also *Pierce v. District of Columbia*, 128 F. Supp.

25    3d 250, 269 (D.D.C. 2015) (ADA imposes an affirmative duty to assess and

26    accommodate obvious disabilities; exclusion conveys stigma and isolation that

27    constitutes irreparable harm). *Cf. Fortyune v. AMC, Inc.*, 364 F.3d 1075, 1083 (9th

28    Cir. 2004) (exclusion from equal participation in entertainment setting was irreparable

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   harm).

2      Plaintiff has already refrained from union activities due to embarrassment

3   caused by the cropping policy. Plank Supp. Decl. ¶¶ 6–7. Each time Plaintiff refrains,

4   the lost opportunity cannot be restored. Id. These are precisely the types of ongoing

5   harms courts recognize as irreparable.

6      Here, the cropping of Plaintiff's service animal from his official election photo

7   conveys the message that his disability-related accommodation is not legitimate or

8   worthy of recognition. That stigmatic injury is precisely the type courts deem

9   irreparable. Even if Defendant contends this election cycle has ended, the harm is

10  "capable of repetition, yet evading review," a well-recognized exception to mootness.

11  See, e.g., *Southern Pac. Terminal*, 219 U.S. at 515.

12     Defendant's Opposition underscores this point. By arguing that Plaintiff

13  suffered no harm because his service dog was mentioned in the Guide text and

14  pictured elsewhere, Defendant concedes the very centrality of the service animal to

15  Plaintiff's identity and equal participation. To acknowledge its significance while

16  simultaneously erasing it from the official image is not a cure; it is the harm.

17  **B. The Harm Is Ongoing**

18     Defendant suggests the claim is moot because the Guide has been mailed. But

19  the altered image continues to appear in official publications accessible to thousands

20  of members and industry observers, including the online version. Each viewing

21  perpetuates the misrepresentation and inflicts new harm. Courts consistently hold that

22  such ongoing publication supports injunctive relief. See *Montoro v. Warner Bros.*

23  *Pictures*, 635 F.2d at 647–48 (misattribution in film credits caused ongoing,

24  irreparable reputational injury); *Gilliam, 538 F.2d at 19* (unauthorized alteration of

25  artistic work was irreparable harm to dignity and reputation). Plaintiff has also

26  provided sworn evidence of this harm. See Plank Supp. Decl. 991 6-7 (describing

27  specific lost opportunities to participate, including declining to attend the August 29,

28  2025 Disability Committee meeting).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  See also *Araya v. Gawker Media*, No. 3:12-cv-00128-FDW-DSC, 2012 WL

2  1496205 (W.D.N.C. Apr. 27, 2012) (lawsuit over cropping and altering a yearbook

3  photograph, recognizing dignitary and reputational harm from misrepresentation). Cf.

4  *Nolen v. PeopleConnect, Inc*., No. 21-cv-00485-EMC, 2023 WL 8879286 (N.D. Cal.

5  Dec. 22, 2023). (recognizing legally protected interests in the accurate use of

6  yearbook images).

7  Defendant's insistence that the case is moot because ballots are counted

8  overstates its position. The cropping policy is recurrent, the altered image remains

9  live, and Defendant's categorical assertion that "it is over" merely highlights why the

10  harm is "capable of repetition, yet evading review." *Southern Pac. Terminal*, 219 U.S.

11  at 515.

12  **C. Damages Are Inadequate to Remedy the Injury**

13  Money damages cannot repair the official record or undo the stigma of having

14  one's disability-related accommodation erased in a union election guide. Once

15  circulated, reputational and dignitary injuries linger in ways no damages award can

16  correct. The only adequate remedy is injunctive relief requiring Defendant to use the

17  unaltered photograph and reform its policy.

18  **III. Balance of Equities and the Public Interest Strongly Favor the Injunction**

19  The equities here are one-sided. Defendant faces no burden from using the

20  unaltered photograph already in its possession. By contrast, Plaintiff continues to

21  suffer exclusion and deterrence from union participation, as detailed in his

22  Supplemental Declaration. See Plank Supp. Decl. ¶¶ 6–7, 13–14.

23  Both federal and California law independently prohibit Defendant's cropping

24  policy. See, e.g., Cal. Civ. Code §§ 54–54.2 (CDPA); Cal. Gov. Code § 12940(b)

25  (FEHA). Enjoining the policy serves not only the ADA's mandate of equal access but

26  also California's parallel civil rights guarantees. Because Plaintiff's ADA, FEHA, and

27  CDPA claims all arise from the same nucleus of operative fact — Defendant's

28  application of its cropping policy — they form a single case or controversy under 28

12

U.S.C. § 1367(a). Supplemental jurisdiction is therefore proper, and declining it would be inefficient and contrary to judicial economy.

The public interest is always served by enforcement of civil rights statutes and ensuring that union elections and communications are accessible on equal terms. Coalition partner materials confirm that inclusion is administratively seamless. Id. ¶¶ 16–19 & Ex. B. Where, as here, the requested modification is minimal and the harm ongoing, both the balance of equities and the public interest weigh heavily in favor of preliminary relief..

## IV. THE UNIFORMITY DEFENSE FAILS

### A. Neutral Rules Cannot Justify Disparate Exclusion

Defendant argues that its cropping rule applies to all candidates alike. But the ADA does not excuse neutral rules that deny meaningful access to disabled individuals. In *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), a facially neutral quarantine rule for all dogs was struck down because it disproportionately burdened blind persons using guide dogs. The same principle applies here: a "no animals" rule is not neutral in effect when it erases the very accommodation that enables equal participation.

### B. Service Animals Are Legally Distinct from Pets

Defendant equates Plaintiff's service animal with other candidates' personal choices (e.g., pets or props). That comparison ignores controlling law. A service animal is not a personal accessory; it is a recognized accommodation under the ADA. Cropping a service animal out of an official image denies recognition of the disability itself, not just a personal preference.

### C. Defendant's Practices Undermine Its Claim of Uniformity

Even within SAG-AFTRA, practices vary. Plaintiff's cropped Los Angeles Local image (Plank Supp. Decl. Ex. A) sits alongside comparator images from the Philadelphia Local Guide (Ex. B), which were not cropped at all. Defendant's own publications thus confirm that variation is feasible and that "uniformity" is not

1  inviolate. A reasonable modification here imposes no burden and aligns with

2  flexibility already present across Locals.

3      Defendant's invocation of uniformity is further undermined by cases

4  recognizing that civic participation processes must accommodate disability even

5  where formal rules appear neutral. As in voting contexts, equal access in union

6  elections implicates not just individual rights but the legitimacy of the process itself.

7  See *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 547 (W.D. Tex.

8  2022) (ADA applied to voting procedures that burdened disabled voters despite

9  facially neutral election rules); *League of Women Voters of Fla., Inc. v. Lee*, 595 F.

10  Supp. 3d 1042, 1070–71 (N.D. Fla. 2022) (finding irreparable harm where voting

11  rules restricted equal participation of disabled voters). And administrative burdens

12  cannot override statutory civil rights duties.  See *Henrietta D. v. Bloomberg*, 331 F.3d

13  261, 280 (2d Cir. 2003).

14      Defendant's Opposition leans heavily on "uniform application," but its own

15  publications undercut that claim. The Philadelphia Local's Guide images were left

16  intact, demonstrating that cropping is not an inflexible necessity but a discretionary

17  practice. That inconsistency further undermines any reliance on supposed uniformity.

18  The ADA does not permit a policy to be applied rigidly where the same organization

19  has already shown flexibility. Defendant's inconsistency confirms that "uniformity" is

20  no defense to denying meaningful access.

21  **V. EXHAUSTION DOES NOT BAR PRELIMINARY RELIEF**

22      Defendant may argue that Plaintiff's claims are procedurally barred because the

23  ADA (Title I) and California's Fair Employment and Housing Act ("FEHA")

24  ordinarily require administrative exhaustion. (Cal. Civ. Code §§ 54, 54.2) That

25  argument cannot defeat Plaintiff's request for a preliminary injunction for four

26  independent reasons. See *EEOC v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d

27  179, 192–93 (D. Conn. 2017) (holding injunctive ADA enforcement appropriate even

28  absent monetary remedies, because equitable relief is central to the statute's remedial

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  scheme).

2       Defendant's Opposition frames the case solely under Title III, treating it as a

3  "public accommodation" dispute. That framing is incomplete. Plaintiff's ADA claim

4  arises more broadly, including Title I, which expressly applies to labor organizations

5  as covered entities. 42 U.S.C. §§ 12111(2), (7); 12112(a). Although Defendant briefly

6  alluded to Title I in its TRO Opposition, it offered no substantive analysis here. The

7  ADA prohibits discrimination in the "terms, conditions, and privileges of

8  employment," and the representation of members in official union publications is

9  among those protections. Defendant's failure to address Title I leaves its Opposition

10 incomplete.

11 **A. This Case Is Not a Conventional Employment Claim**

12      Plaintiff does not challenge a hiring or termination decision, or a workplace

13 accommodation. The claim arises from Defendant's exclusionary election policies —

14 cropping disability-related features out of official candidate photographs. That

15 conduct falls outside the type of employment practice exhaustion was designed to

16 address. The relief sought is prospective equitable relief against a union policy, not

17 retrospective damages for workplace discrimination.

18 **B. Exhaustion Is a Claim-Processing Rule, Not Jurisdictional**

19      Even if exhaustion applies, the Supreme Court has made clear that Title VII's

20 charge-filing requirement — and by extension Title I of the ADA — is not

21 jurisdictional. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851–52 (2019). Accordingly,

22 exhaustion cannot deprive this Court of power to consider preliminary equitable relief.

23 **C. Administrative Agencies Cannot Grant the Relief Sought**

24      Even if exhaustion applied, Plaintiff seeks equitable relief that the EEOC

25 cannot provide: an injunction requiring Defendant to cease cropping disability-related

26 features from official election materials. The Supreme Court has emphasized that

27 exhaustion is not required where the administrative agency lacks power to grant the

28 remedy. *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48 (2023). Here, only this

1    Court can order the relief necessary to prevent ongoing harm.

2    **D. ADA Claims Against Unions Proceed Independently of Other Labor Channels**

3    In *Garity v. American Postal Workers Union, Nat'l Labor Org.*, 828 F.3d 848,

4    863–64 (9th Cir. 2016), the Ninth Circuit held that "[t]he ADA provides an

5    independent statutory basis for relief" against unions, and that exhaustion of

6    contractual grievance procedures is not required. Plaintiff's claim here is an ADA

7    claim against a labor organization for discriminatory treatment, not a repackaged duty-

8    of-fair-representation grievance. Other circuits, including the D.C. Circuit in *Lucas v.*

9    *AFGE*, 90 F.4th 123, 134–36 (D.C. Cir. 2025), likewise confirm that ADA and Title

10    VII claims against unions are not precluded by labor statutes even where the same

11    conduct could also constitute an unfair labor practice. Defendant cannot insulate itself

12    from ADA liability by recharacterizing this action as a grievance or unfair labor

13    practice, or by insisting on procedures that cannot provide the injunctive relief sought.

14    Nor does Title IV of the LMRDA preempt this action; Congress imposed ADA

15    obligations on labor organizations independent of election procedures, and courts

16    consistently allow parallel civil rights claims to proceed where they arise from

17    discriminatory practices rather than election mechanics.

18    **E. The Court Should Reach the Merits of Plaintiff's Motion**

19    Together, these authorities confirm that exhaustion defenses do not bar this

20    Court from addressing Plaintiff's request for preliminary relief. Plaintiff faces ongoing

21    irreparable harm from Defendant's admitted cropping policy, and the Court has full

22    authority to enjoin that policy now. Exhaustion questions, if any, can be resolved in

23    due course.

24    Defendant does not dispute its 'no animals' policy applies to Plaintiff; the

25    question is whether the ADA requires modification. The remaining question is

26    whether the ADA and FEHA require reasonable modification of that policy to prevent

27    exclusion of disabled members. That is a pure merits question this Court is fully

28    empowered to decide. Exhaustion defenses, if any, can be addressed later. They do not

1    justify leaving ongoing discrimination unremedied now.

2         See also Williston on Contracts § 55F:22 (4th ed. May 2025 update) (explaining

3    that a union may discuss the impact of accommodations on a collective-bargaining

4    agreement, but cannot impede the employer's obligations under the ADA, and only

5    direct conflicts require written consent).

6         Defendant may suggest that EEOC guidance or other agency interpretations

7    support its position. But the Supreme Court has recently clarified that courts must

8    apply statutory text and precedent directly, without deference to agency gloss. *Loper*

9    *Bright Enters. v. Raimondo*, 603 U.S. (2024) (overruling *Chevron U.S.A. v. NRDC*,

10   467 U.S. 837 (1984)). Accordingly, this Court's analysis turns on the ADA's language

11   and controlling Ninth Circuit authority, not nonbinding administrative interpretations.

12   Those authorities — including *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996);

13   *Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012); and *Fortyune*,

14   364 F.3d 1075 — squarely establish that facially neutral policies must yield to

15   reasonable modification where they impose unique burdens on disabled individuals.

16        Courts routinely grant injunctive relief under the ADA irrespective of

17   exhaustion, because equitable remedies are central to the statute's scheme. See *EEOC*

18   *v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 192–93 (D. Conn. 2017).

19        Defendant argues that Plaintiff's authorities are "distinguishable" because they

20   arose in settings like theatres, theme parks, or quarantine regulations. But those cases

21   were cited for the principle they share: a facially neutral policy that uniquely burdens

22   individuals with disabilities must yield where reasonable modification is available.

23   *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996); *Baughman v. Walt Disney*

24   *World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012). That principle applies equally here.

25   A union's deliberate alteration of members' photographs to suppress visible disability-

26   related features is no less exclusionary than a rule that bars a guide dog or a

27   wheelchair. The ADA does not permit such selective erasure.

28        Nor does *Whitaker v. Starbucks* assist Defendant. That case rejected an attempt

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  to impose accessibility design requirements beyond those legislated by Congress.

2  Here, Plaintiff seeks no new standard, but enforcement of the ADA's core guarantee

3  that individuals with disabilities may participate without exclusionary barriers.

4  **CONCLUSION**

5  Defendant admits that it enforces a "no animals in photos" policy and that

6  Plaintiff's official election headshot was cropped pursuant to that rule. The only

7  question is whether the ADA and California civil-rights statutes require a reasonable

8  modification when such a rule uniquely burdens disabled members. Under binding

9  Ninth Circuit precedent, the answer is yes. *Crowder v. Kitagawa*, 81 F.3d 1480 (9th

10  Cir. 1996); *Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012).

11  The injury is not historical or speculative. The altered image continues to be

12  published and viewed in Defendant's official materials, perpetuating stigma and

13  misrepresentation each time it is accessed. Civil-rights violations of this kind are

14  irreparable, and damages cannot repair the official record or undo the exclusion of

15  disability-related identity.

16  Defendant speculates about disruption to the election, but Plaintiff does not

17  seek to halt, rerun, or invalidate any vote. The requested injunction is narrow, imposes

18  no burden on other members, and simply removes a discriminatory disparity. Granting

19  the injunction would simply require Defendant to use that image and conform its

20  policy to settled law. The equities and the public interest favor equal access and

21  accurate representation in union processes that define professional participation.

22  Defendant suggests that injunctive relief would impose undue burden, but the

23  unaltered photograph is already in its possession.

24  The only "burden" is ceasing an unlawful practice.  Courts consistently hold

25  that the public interest favors enforcement of civil rights statutes over administrative

26  convenience. The public interest always favors enforcement of civil rights statutes.

27  See *Preminger v. Principi*, 422 F.3d 815, 826–27 (9th Cir. 2005) (recognizing that the

28  public interest inquiry is a required part of preliminary injunction analysis and that

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    public interest is implicated whenever constitutional or statutory rights are at stake).

2    This is especially true in representational contexts, where equal participation in

3    electoral processes is essential to societal inclusion. See *League of Women Voters of*

4    *Fla.*, Inc. v. Lee, 595 F. Supp. 3d 1042, 1070–71 (N.D. Fla. 2022); *La Unión del*

5    *Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 547 (W.D. Tex. 2022).

6         Furthermore, preliminary relief is also warranted where "serious questions" are

7    raised and the balance of hardships tips sharply toward the plaintiff. *A & M Records,*

8    *Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001).

9         For these reasons, Plaintiff respectfully asks the Court to grant his Motion.

10

11

12

13    Dated: September 5, 2025                    Respectfully Submitted,

14                                               /s/Alexander Douglas Plank

15

16                                               Alexander Douglas Plank

17                                               c/o Arise Artists Agency

18                                               PO Box 930

19                                               Manhattan Beach, CA 90267

20                                               Phone: (703) 966-8504

21                                               Email: alex@alexplank.com

22

23

24

25

26

27

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

2

3

4   **CERTIFICATE OF COMPLIANCE**

5   The undersigned, Plaintiff, certifies that this brief contains 4,452 words, which

6   complies with the word limit of L.R. 11-6.1.

7

8   Dated: September 5, 2025

9

10

11                                                    Respectfully submitted,

12                                                    /s/Alexander Plank

13                                                    Alexander Douglas Plank

14                                                    c/o Arise Artists Agency

15                                                    PO Box 930

16                                                    Manhattan Beach, CA 90267

17                                                    Phone: (703) 966-8504

18                                                    Email: alex@alexplank.com

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION