Susan Davis (*pro hac vice* admitted)
Olivia R. Singer (Calif. Bar No. 312770)
Kayla Morin (*pro hac vice* admitted)
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022-4869
Tel: (212) 563-4100
sdavis@cwsny.com
*Attorneys for Defendant SAG-AFTRA*

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

-------------------------------------------------------x

|  |  |
|---|---|
| | : Case No. |
| | : 25-cv-07523 (AB) (SSC) |
| ALEXANDER DOUGLAS PLANK, | : |
| | : **MEMORANDUM OF** |
| | : **POINTS AND** |
| *Plaintiff,* | : **AUTHORITIES IN** |
| | : **SUPPORT OF SAG-** |
| - v. - | : **AFTRA'S MOTION TO** |
| | : **DISMISS PLAINTIFF'S** |
| | : **FIRST AMENDED** |
| | : **COMPLAINT** |
| | : |
| SAG-AFTRA, | : **Hearing Date:** October 31, |
| | : 2025 |
| *Defendant.* | : **Time:** 10:00 a.m. |
| | : **Judge:** Hon. André Birotte Jr. |
| | : **Courtroom:** 7B |

-------------------------------------------------------x

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ................................................................1

FACTS ......................................................................................................3

    The 2025 Election...............................................................................3

    The Instant Dispute............................................................................4

ARGUMENT ............................................................................................6

I.     PLAINTIFF'S CLAIMS ARE MOOT. .........................................6

II.    PLAINTIFF'S ADA CLAIM FAILS. ...........................................8

A.    Plaintiff lacks standing to pursue a Title III ADA claim and has not
alleged an immediate threat of future injury. ......................................9

B.    Plaintiff's Title I claim is not actionable under the ADA.............................11

C.    Plaintiff fails to state a claim upon which relief can be granted under
the ADA. ..........................................................................................13

III.   PLAINTIFF'S STATE-LAW CLAIMS FAIL. ..............................17

    A.    The Court should not exercise supplemental jurisdiction over
    Plaintiff's state-law claims................................................17

    B.    Plaintiff fails to state a claim under state law......................................18

IV.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
PROPER SERVICE.........................................................................21

CONCLUSION........................................................................................22

CERTIFICATE OF COMPLIANCE .......................................................23

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allen v. Cellco P'ship*,
    No. 24-4573, 2025 WL 1367824 (9th Cir. May 12, 2025) ..................................9

*Ashoff v. City of Ukiah*,
    130 F.3d 409 (9th Cir. 1997) ..................................12

*Bassam v. Bank of Am.*,
    No. CV 15-00587 MMM FFMX, 2015 WL 4127745 (C.D. Cal. July 8, 2015) ..................................20

*Beckington v. Am. Airlines, Inc.*,
    926 F.3d 595 (9th Cir. 2019) ..................................13

*Borodaenko v. Twitter, Inc.*,
    No. 22-CV-07226-AMO, 2024 WL 3908104 (N.D. Cal. Aug. 21, 2024) ...14, 16

*Brockmeyer v. May*,
    383 F.3d 798 (9th Cir. 2004) ..................................21

*Brownfield v. Yellow Freight Sys.*,
    185 F.3d 866 (9th Cir. 1999) ..................................12

*Bruce v. Becerra*,
    No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867 (S.D. Cal. May 13, 2025) ..................................16

*Burtt v. Sunnova Energy Corp.*,
    No. 2:22-CV-02754-RGK-PD, 2022 WL 3574297 (C.D. Cal. June 22, 2022) ..................................18

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
    631 F.3d 939 (9th Cir. 2011) ..................................9, 10

*Clay v. Pac. Bell Tel. Co.*,
    639 F. App'x 420 (9th Cir. 2016) ..................................19

*Cullen v. Netflix, Inc.*,
    600 F. App'x 508 (9th Cir. 2015) ..................................19

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ..................................14

ii

*Erasmus v. Chien*,
    650 F.Supp.3d 1050 (E.D. Cal. 2023) ................................................................. 10

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
    753 F.3d 862 (9th Cir. 2014) ............................................................................ 10

*Frausto v. Bank of Am., Nat'l Ass'n*,
    No. SACV191583DOCADS, 2019 WL 8012420 (C.D. Cal. Dec. 4,
    2019) ................................................................................................................. 19

*Garity v. APWU Nat'l Lab. Org.*,
    828 F.3d 848 (9th Cir. 2016) ............................................................................ 12

*Garity v. APWU Nat'l Lab. Org.*,
    840 F. App'x 924 (9th Cir. 2020)................................................................ 14, 15

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*,
    603 F.3d 666 (9th Cir. 2010) ............................................................................ 14

*Gomez v. Miersch*,
    No. 21-CV-08936-CRB, 2022 WL 1271009 (N.D. Cal. Apr. 28, 2022) ....... 9, 17

*Gordon v. Kounalkis*,
    No. CV 24-3683-MRA (AS), 2024 WL 5396265 (C.D. Cal. Oct. 30,
    2024) ................................................................................................................... 7

*Herman Fam. Revocable Tr. v. Teddy Bear*,
    254 F.3d 802 (9th Cir. 2001) ............................................................................ 17

*Hooker v. Parker-Hannifin Corp.*,
    No. SACV 11-483-JST EX, 2012 WL 1156437 (C.D. Cal. Apr. 3, 2012),
    *aff'd*, 585 F. App'x 386 (9th Cir. 2014) ............................................................ 19

*Kniss v. Booth*,
    No. SACV071215AHSPJWX, 2009 WL 10673238 (C.D. Cal. Mar. 20,
    2009) ................................................................................................................. 22

*Koch v. California Water Serv. Co.*,
    No. 1:22-CV-01333-KES-CDB, 2024 WL 4753850 (E.D. Cal. Nov. 12,
    2024) ................................................................................................................. 16

*Koller v. Harris*,
    312 F.Supp.3d 814 (N.D. Cal. 2018).................................................................. 8

*LA All. for Hum. Rts. v. Cnty. of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021) ................................................................. 9

*Langer v. Pep Boys Manny Moe & Jack of California*,
  No. 20-CV-06015-DMR, 2021 WL 148237 (N.D. Cal. Jan. 15, 2021) ............. 10

*Lindsay v. Jenshar Ltd. P'ship*,
  No. CV 15-8536-CBM-JEM, 2017 WL 11635466 (C.D. Cal. Feb. 8,
  2017) .............................................................................................. 10

*Lujan v. Pac. Mar. Ass'n*,
  165 F.3d 738 (9th Cir. 1999) ............................................................... 12

*McColm v. Hearst Corp.*,
  No. C01-3266SI, 2001 WL 1112204 (N.D. Cal. Sept. 17, 2001) ................. 8

*Mercer v. Amalgamated Transit Union Div. 689, AFL-CIO*,
  No. GJH-21-3274, 2023 WL 2213689 (D. Md. Feb. 24, 2023) ................... 13

*Miller v. Sacramento City Unified Sch. Dist.*,
  No. 221CV0757JAMCKDPS, 2021 WL 4806860 (E.D. Cal. Oct. 14,
  2021) .............................................................................................. 12

*Muhammad v. Carvalho*,
  No. 2:23-CV-10232-SPG-E, 2024 WL 4766193 (C.D. Cal. Nov. 4, 2024) ...... 16

*Muldoon v. Teamsters Loc. 572*,
  No. CV 22-0161 DSF, 2023 WL 3588384 (C.D. Cal. Apr. 17, 2023),
  *aff'd*, No. 23-55448, 2024 WL 4987247 (9th Cir. Dec. 5, 2024) ................. 12

*Murray v. Mayo Clinic*,
  934 F.3d 1101 (9th Cir. 2019) ............................................................. 15

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,
  9 F.4th 1201 (9th Cir. 2021) ................................................................. 6

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ............................................................. 13

*Oliver v. Ralphs Grocery Co.*,
  654 F.3d 903 (9th Cir. 2011) ............................................................... 17

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) ............................................................. 6, 7

*Quesada v. Albertson's LLC*,
    No. SACV201407PSGDFMX, 2022 WL 2176512 (C.D. Cal. Feb. 1,
    2022) ................................................................................................18

*Rubin v. City of Inglewood*,
    No. CV 20-319-MWF (EX), 2021 WL 3185780 (C.D. Cal. Mar. 16,
    2021) ................................................................................................10

*Singh v. IKEA Distribution Servs., Inc.*,
    No. 120CV0975NONEJLT, 2021 WL 1907608 (E.D. Cal. May 12, 2021)......20

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) .................................................................3

*Stambanis v. TBWA Worldwide, Inc.*,
    No. 219CV03962ODWJEMX, 2020 WL 58733 (C.D. Cal. Jan. 6, 2020) ........20

*Stern v. Sony Corp. of Am.*,
    459 F. App'x 609 (9th Cir. 2011) ..........................................................14

*Treanor v. Washington Post Co.*,
    826 F.Supp. 568 (D.D.C. 1993)..............................................................10

*United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-*
    *CIO*, 770 F.3d 846 (9th Cir. 2014) ......................................................12

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................3

*Vogel v. 99 Cents Only Stores, LLC*,
    No. 2:16-CV-08262-RGK (AFM), 2017 WL 11918001 (C.D. Cal. Feb. 2,
    2017) ................................................................................................21

*Walls v. Kiewit Corp.*,
    No. CV198319PSGJEMX, 2019 WL 8685070 (C.D. Cal. Dec. 17, 2019) .......18

*Weeks v. Union Pac. R.R. Co.*,
    137 F.Supp.3d 1204 (E.D. Cal. 2015) .....................................................15

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) ................................................................9

*Whitaker v. Yard House*,
    No. SACV192290JVSJDEX, 2020 WL 3805807 (C.D. Cal. Mar. 23,
    2020) ................................................................................................17

v

*Young v. Facebook, Inc.*,
   790 F.Supp.2d 1110 (N.D. Cal. 2011) ................................................. 10

*Zimmerman v. Oregon Dep't of Just.*,
   170 F.3d 1169 (9th Cir. 1999) ................................................. 8, 16

**California Cases**

*Harris v. City of Santa Monica*,
   294 P.3d 49 (Cal. 2013) ................................................. 18

**Federal Statutes**

29 U.S.C. § 481 *et seq.* ................................................. 4

42 U.S.C.
   § 12101 *et seq.* ................................................. 1
   § 12112(a) ................................................. 11, 15
   § 12117(a) ................................................. 16
   § 12132 ................................................. 8
   § 12181(7) ................................................. 9
   § 12182(a) ................................................. 9

**California Statutes**

Cal. Civ. Code
   § 54 *et seq.* ................................................. 1
   § 54(a) ................................................. 19
   § 54.2(a) ................................................. 20

Cal. Gov. Code
   §§ 12960, 12965 ................................................. 1, 19

**Other Authorities**

29 C.F.R. § 452.69 ................................................. 4

Fed. R. Civ. P. 4 ................................................. 3, 21

Fed. R. Civ. P. 12(b)(1) ................................................. 1, 3, 9

Fed. R. Civ. P. 12(b)(5) ................................................. 1, 21, 22

Fed. R. Civ. P. 12(b)(6) ................................................. 1, 8, 13, 14

Local Rule 4-6 ................................................. 21

vi

**PRELIMINARY STATEMENT**

Defendant SAG-AFTRA submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff's First Amended Complaint ("FAC"), Dkt. No. 39, under Federal Rule of Civil Procedure 12(b)(1), Federal Rule of Civil Procedure 12(b)(6), and Federal Rule of Civil Procedure Rule 12(b)(5).

As discussed at length in SAG-AFTRA's prior pleadings, Plaintiff challenges and seeks to enjoin a decision made by a union, SAG-AFTRA, in an internal union election pursuant to its established election policies. Notably, the election concluded on September 12, 2025, and Plaintiff won the two positions he was seeking. Where, as is the case here, an election has concluded, the U.S. Department of Labor has exclusive jurisdiction over all matters relating to the election.

Plaintiff claims that SAG-AFTRA discriminated against him due to his disability by cropping his photograph in an internal union election guide (the "Voter's Guide") to include only a headshot, a policy that SAG-AFTRA has applied to every photo submitted by the thousands of candidates who ran for office in the past six election cycles. In the FAC, Plaintiff brings a federal claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* He also brings state-law statutory claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, and the California Disabled Persons Act ("CDPA"), Cal. Civil Code § 54 *et seq.*, as well as a common-law claim for intentional infliction of emotional distress ("IIED").

As set forth below, the FAC suffers from numerous defects. *First*, and critically, as this Court held in its order denying Plaintiff's motion for a temporary restraining order ("TRO"), Plaintiff's claims are moot. The Voter's Guide was mailed more than a month ago, the election at issue has concluded, Plaintiff *won* both positions for which he sought election, and SAG-AFTRA

removed the Voter's Guide from its website.  Furthermore, because SAG-AFTRA adopts updated policies for each new election cycle, the disputed policy at issue here is no longer in effect for future election cycles, and therefore the Court cannot grant any meaningful relief.  Each of these occurrences alone could be sufficient to moot Plaintiff's claims; collectively, they indisputably eliminate any semblance of a live controversy for this Court to adjudicate.

*Second,* having dropped his Equal Protection Claim, Plaintiff's sole remaining federal claim under the ADA is deficient on multiple grounds.  Plaintiff's theories under both Title I (employment) and Title III (public accommodations) of the ADA both suffer from multiple jurisdictional and merits-based flaws.  Specifically, as to subject-matter jurisdiction, Plaintiff lacks standing to pursue his Title III claim because he cannot connect any claimed injury to a public accommodation and cannot allege an immediate threat of future injury, and his Title I claim challenging an internal union election is simply not a viable cause of action under federal law.  And, even if the Court did not lack subject-matter jurisdiction over Plaintiff's ADA claim, the claim fails on the merits.  Plaintiff is unable to allege that SAG-AFTRA's Voter's Guide is a public accommodation under Title III, and he fails to allege an adverse employment action or raise an inference of discriminatory motive necessary for a Title I claim.

*Third*, in light of the non-viability of Plaintiff's ADA claim as to both jurisdiction and on the merits, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law FEHA, CDPA, and IIED claims.  In any event, like his ADA claim, Plaintiff's state-law claims are wholly without merit because Plaintiff cannot allege that SAG-AFTRA discriminated against him due to his disability, that SAG-AFTRA denied him access to a public accommodation, or that cropping Plaintiff's photograph in accordance with established policy is the type of extreme and outrageous conduct required to state an IIED claim.

*Finally*, despite his persistent filings, at the time of filing this motion to dismiss, Plaintiff has failed to serve SAG-AFTRA as required by Federal Rule of Civil Procedure 4 and has failed to file a proof of service.

For all the foregoing reasons and as discussed further below, the Court should dismiss the FAC with prejudice.

## FACTS[1]

Defendant SAG-AFTRA is a national labor organization with members in California. FAC at 1, ¶ 7. Plaintiff Alexander Douglas Plank is a member of SAG-AFTRA's Los Angeles Local Union ("LA Local"), who ran for and won a seat on the LA Local Board, as well as a Convention Delegate position, in the 2025 SAG-AFTRA LA Local election (the "2025 Election"). FAC, Ex. B at 5, 13;[2] Declaration of Michelle Bennett dated October 2, 2025 ("Bennett Decl.") ¶ 4. Plaintiff is disabled and relies on a service animal as a disability accommodation. FAC at 3–4, ¶ 14.

The 2025 Election

On September 12, 2025, SAG-AFTRA completed its internal election for national officers, National Board members, local officers, Local Board members, and Convention Delegates. FAC, Ex. B at 2 (stating that candidates running unopposed will be installed in office on September 12, 2025); Bennett

---

[1] The following facts are drawn from the FAC, the exhibits attached to the FAC, and the Declaration of Michelle Bennett in Support of SAG-AFTRA's Motion to Dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider documents attached to the complaint on a motion to dismiss); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (a defendant bringing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can "attack the substance of a complaint's jurisdictional allegations" by relying on "affidavits or any other evidence properly before the court").

[2] Citations to exhibits herein refer to the PDF pagination.

Decl. ¶ 3.  Internal union elections are highly regulated by the United States Department of Labor, which has exclusive jurisdiction over all post-election disputes pursuant to Title IV of the Labor-Management Reporting and Disclosure Act.  29 U.S.C. § 481 *et seq.*

Although not required by Title IV or its regulations, SAG-AFTRA prepares and distributes to eligible voters a Voter's Guide, which contains a headshot and a statement from each candidate.  FAC at 3, ¶ 12, Ex. B.  Where a union "distributes any candidate's literature without charge . . . , all other candidates are entitled to have their literature distributed *on the same basis*."  29 C.F.R. § 452.69 (emphasis added).  As is relevant here, SAG-AFTRA's Nominations and Elections Policy ("Election Policy"), along with a set of candidate instructions, "specif[ies] that all photos submitted for the [V]oter's [G]uide must be a headshot of the candidate."  FAC, Ex. C at 2–3 (Bennett email to Plank stating that "the photo was cropped only to align with SAG-AFTRA's Nominations & Elections Policy and the candidate instructions"); *see also* FAC at 3 ¶ 11 ("SAG-AFTRA stated that 'all photos submitted for the Voter's Guide must be a headshot of the candidate' and represented that 'all candidate photos have been cropped to comply with this rule'").

The Instant Dispute

In July 2025, Plaintiff submitted a photograph that "depicted Plaintiff with his service animal" to SAG-AFTRA for inclusion in its Voter's Guide for the 2025 Election.  *Id.* at 3, ¶ 8.  On August 8, 2025, Plaintiff alleges that he discovered that the photograph included in the Voter's Guide "was altered" such that Plaintiff's "service animal was cropped out."  *Id.* ¶ 9.  That same day, through an email to Michelle Bennett, Plaintiff "notified SAG-AFTRA of his objection to the alteration" of his photograph and requested "correction or withdrawal."  *Id.* ¶ 10.  Plaintiff stated that he had "hoped to use [his] position on the board to advocate for disabled performers, especially those with service animals."  *Id.*, Ex.

4

C at 3.  Plaintiff's 100-word statement, however, which accompanied his photograph in the Voter's Guide, clearly set forth his position on this issue:

> Once elected, I will be the only member of leadership with a service dog.  As an autistic actor and disability rights activist, I have a passion for improving things for marginalized performers.  Having served as a strike captain and on the performers with disabilities and communications committees, I'm excited to continue to work to bring SAG-AFTRA into the modern era by increasing our union organizing efforts, building solidarity, and improving future negotiations so that our members have opportunities in a rapidly changing world. **TheCoalition2025.org**

*Id*., Ex. B at 5.

Bennett sent Plaintiff an email shortly thereafter, stating:

> Thank you for reaching out to me. I want to assure you that the Union does not stand for disability erasure and that the photo was cropped only to align with SAG-AFTRA's Nominations & Election Policy and the candidate instructions which specify that all photos submitted for the voter's guide must be a headshot of the candidate. . . .
>
> We are always open to suggestions for improving the Union's rules and policies.  We will certainly add this to the list of recommendations to be considered and approved for future election cycles.

*Id*., Ex. C at 2–3.

As reflected in Bennett's email, because SAG-AFTRA adopts a new Election Policy prior to each election cycle, the 2025 Election Policy is no longer in effect for future election cycles.  Bennett Decl. ¶ 5.  Prior to finalizing new policies in each election cycle, SAG-AFTRA reviews suggestions for changes to its Election Policy and related procedures.  *Id.*  Bennett added Plaintiff's suggestion about including service animals in campaign photos to the list of recommendations to be considered for the 2027 election cycle.  *Id.*

Plaintiff responded to Bennett on August 8, 2025, again protesting the cropping of his service animal from his photograph and asking when the Voter's Guide was being mailed.  FAC, Ex. C at 2.  Bennett advised Plaintiff on August 12, 2025 that the Voter's Guide was being mailed the next day, and stated:

> [T]he photo was cropped only to align with SAG-AFTRA's Nominations & Election Policy and the candidate instructions, which specify that all photos submitted for the Voter's Guide must be a headshot of the candidate.  All candidate photos have been cropped to comply with this Rule. The Election Committee does not have the authority to make any exceptions to the rules set forth in the SAG-AFTRA Nominations and Election Policy; it only has the authority to determine whether the candidate requirements have been met.

*Id*.  SAG-AFTRA mailed the Voter's Guide on August 13, 2025.  FAC at 3, ¶ 11.

The 2025 Election concluded on September 12, 2025, and Plaintiff won a seat on the LA Local Board and a Convention Delegate position.  Bennett Decl. ¶¶ 3–4.  Thereafter, on September 17, 2025, SAG-AFTRA removed the Voter's Guide for the LA Local from its website, and all of the voter guides were then deleted from the website on September 25, 2025.  *Id*. ¶ 6.

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE MOOT.

"The case or controversy requirement of Article III deprives federal courts of jurisdiction to hear moot cases."  *Native Vill. of Nuiqsut v. Bureau of Land Mgmt*., 9 F.4th 1201, 1208 (9th Cir. 2021) (cleaned up).  Practically, "[t]his means that, at all stages of the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant that is likely to be redressed by a favorable judicial decision."  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (cleaned up).  Federal courts lack the authority "to effectively remedy a present controversy between the parties where a plaintiff

1 seeks to enjoin an activity that has already occurred" and are unable to "undo that

2 action's allegedly harmful effects."  *Id.* (internal quotations omitted).

3          Here, Plaintiff's claims are premised on the 2025 Election and Voter's

4 Guide.  *See generally* FAC.  However, a series of subsequent events has rendered

5 his case entirely moot, eliminating any live controversy appropriate for judicial

6 resolution.  First, as this Court recognized in its order denying Plaintiff's

7 application for a TRO, the Voter's Guide was mailed on August 13, 2025; thus,

8 Plaintiff's request to enjoin the mailing of the Voter's Guide is moot.  Dkt. No. 20

9 at 3–4.  Second, the 2025 Election concluded on September 12, 2025.  Bennett

10 Decl. ¶ 3.  Third, Plaintiff was successful in both races in which he ran, winning a

11 seat as Local Board Member and as a Convention Delegate.  *Id.* ¶ 4.  Fourth, SAG-

12 AFTRA removed the Voter's Guide from its website on September 17, 2025.

13 *Id.* ¶ 6.  Finally, SAG-AFTRA adopts a new Election Policy prior to each election

14 cycle, and has informed Plaintiff that it will add Plaintiff's suggestion about

15 including service animals in photographs to the list of recommendations to be

16 considered and approved for future election cycles.  *Id.* ¶ 5.  As such, this case,

17 which concerns the policy in effect for the 2025 Election, no longer presents a live

18 dispute, and Plaintiff's allegation that he "intends to continue running for union

19 office" cannot resurrect his claims because the disputed Election Policy is no

20 longer in effect for future election cycles.  FAC at 4, ¶ 18.

21          Accordingly, because there no longer exists a present controversy for

22 this Court to adjudicate, Plaintiff's case is moot, and the Court lacks subject-matter

23 jurisdiction over it.  *See Gordon v. Kounalkis*, No. CV 24-3683-MRA (AS), 2024

24 WL 5396265, at *6–7 (C.D. Cal. Oct. 30, 2024) (claims regarding an election were

25 moot where election at issue had "since concluded" and challenged bills "already

26 expired on their own terms"), *report and recommendation adopted sub nom.*

27 *Gordon v. Kounalakis*, No. CV 24-03683-MRA (AS), 2025 WL 262162 (C.D. Cal.

28 Jan. 22, 2025); *Koller v. Harris*, 312 F.Supp.3d 814, 823 (N.D. Cal. 2018) (court

7

could not provide effective declaratory relief, and therefore claim was moot, where the disputed election had "come and gone").

## II.    PLAINTIFF'S ADA CLAIM FAILS.

The ADA "forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodation (Title III)."  *McColm v. Hearst Corp.*, No. C01-3266SI, 2001 WL 1112204, at *1 (N.D. Cal. Sept. 17, 2001) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)).  Although Plaintiff's ADA theories are not entirely clear, the FAC cites both Title I and Title III of the ADA.  *See* FAC at 1, ¶ 2.[3]  As discussed further below, these claims fail for several reasons.  First, Plaintiff lacks standing to pursue his Title III claim because SAG-AFTRA's Voter's Guide is not a public accommodation and because Plaintiff has not shown a risk of a future injury as required for standing for injunctive relief.  Second, the Court lacks subject-matter jurisdiction over Plaintiff's Title I claim because a claim of disability discrimination in connection with an internal union election is not actionable under the ADA.  Third, even if the Court determines that it has subject-matter jurisdiction over Plaintiff's ADA claims, the claims fail on the merits under Federal Rule of Civil Procedure 12(b)(6).

---

[3] Plaintiff alleges that SAG-AFTRA denied him equal access to "services, programs, or activities," FAC at 5, ¶ 2, language that appears to be drawn from Title II of the ADA.  *See* 42 U.S.C. § 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity").  Even if Plaintiff intended to assert a Title II claim, because SAG-AFTRA is not a public entity, it cannot be held liable under Title II of the ADA.  *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1180 (9th Cir. 1999) ("Congress did not make private entities subject to Title II . . . .").

**A. Plaintiff lacks standing to pursue a Title III ADA claim and has not alleged an immediate threat of future injury.**

Under Federal Rule of Civil Procedure Rule 12(b)(1), dismissal is warranted where a court lacks subject-matter jurisdiction over a plaintiff's claims. *See* Fed. R. Civ. P. 12(b)(1). "A federal court only has subject matter jurisdiction if the plaintiff has Article III standing." *Gomez v. Miersch*, No. 21-CV-08936-CRB, 2022 WL 1271009, at *1 (N.D. Cal. Apr. 28, 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016)). Article III standing requires a plaintiff to show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021). Additionally, to establish standing to pursue injunctive relief under Title III of the ADA, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.), Inc*., 631 F.3d 939, 946 (9th Cir. 2011) (internal quotations omitted).

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Title III lists twelve categories of public accommodations, including, *inter alia*, hotels, restaurants, grocery stores, banks, hospitals, schools, and gymnasiums. 42 U.S.C. § 12181(7); *see also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). Drawing from this list, the Ninth Circuit has held that, to prevail on a Title III claim, a plaintiff must show "some connection between the good or service complained of and an actual physical place." *Allen v. Cellco P'ship*, No. 24-4573, 2025 WL 1367824, at *1 (9th Cir. May 12, 2025).

Plaintiff lacks standing to pursue a claim against SAG-AFTRA because he has not demonstrated that he was denied access to a public

9

accommodation and therefore fails to meet the threshold showing of an injury in fact.  Plaintiff has not, and indeed cannot, cite any case law to support the contention that SAG-AFTRA's Voter's Guide is a public accommodation.  *See, e.g.*, *Young v. Facebook, Inc*., 790 F.Supp.2d 1110, 1115–16 (N.D. Cal. 2011) (dismissing ADA claim against Facebook where Facebook's "internet services" were not a place of public accommodation); *Treanor v. Washington Post Co*., 826 F.Supp. 568, 569–70 (D.D.C. 1993) (a publication is not a place of public accommodation).  Nor has he shown a nexus between the Voter's Guide and an actual physical place.  *See, e.g*., *Erasmus v. Chien*, 650 F.Supp.3d 1050, 1060 (E.D. Cal. 2023) (plaintiff did not establish standing where she failed to allege a sufficient nexus between website and health care center); *Langer v. Pep Boys Manny Moe & Jack of California*, No. 20-CV-06015-DMR, 2021 WL 148237, at *6 (N.D. Cal. Jan. 15, 2021) (plaintiff failed to allege an injury under the ADA absent a nexus between website and physical store).

In any event, even if Plaintiff could establish the requisite nexus between the Voter's Guide and a place of public accommodation, he cannot allege that he faces a "real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946.  Courts typically evaluate the "repeated injury" inquiry by looking to whether an ADA plaintiff "intends to return" to a noncompliant place of public accommodation or is "currently deterred from visiting" such an accommodation.  *See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014). Because SAG-AFTRA develops a new Election Policy for each election cycle and the 2025 Policy is no longer in effect for future election cycles, Plaintiff cannot allege that he currently faces an imminent threat of "repeated injury." *See, e.g.*, *Rubin v. City of Inglewood*, No. CV 20-319-MWF (EX), 2021 WL 3185780, at *3 (C.D. Cal. Mar. 16, 2021) (plaintiff lacked standing where claim "challenge[d] barriers at a temporary event that ha[d] already concluded"); *Lindsay v. Jenshar Ltd. P'ship*, No. CV 15-8536-CBM-JEM, 2017

10

WL 11635466, at *2 (C.D. Cal. Feb. 8, 2017) (plaintiff lacked standing where the alleged barriers no longer existed).  This deficiency is particularly acute here because SAG-AFTRA has offered to consider Plaintiff's recommended revision to the Policy in the next election cycle.

### B.  Plaintiff's Title I claim is not actionable under the ADA.

This Court lacks subject-matter jurisdiction over Plaintiff's Title I claim because the claim is not actionable under the ADA.  The thrust of Plaintiff's Title I claim appears to be that SAG-AFTRA's application of its cropping policy to Plaintiff's photograph in an internal union publication constitutes disability discrimination.  *See generally* FAC.  This claim, however, is simply not encompassed by Title I of ADA, which prohibits disability discrimination related to *employment*.  Specifically, Title I provides, in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added).  As the plain text of the statute shows, Title I's prohibitions against discrimination involve exclusively employment-related activities, including job applications, hiring, advancement, discharge, compensation, and training.  *Id.*  Indeed, the catchall phrase at the end of the provision, "other terms, conditions, and privileges *of employment*," reinforces the statute's limited scope.  *Id.* (emphasis added).   Plaintiff's allegations that SAG-AFTRA discriminated against him in the context of an internal union election do not relate to Plaintiff's employment and thus fall well outside the statutory framework of Title I of the ADA.  As such, the allegations do not give rise to a

federal cause of action, depriving this Court of subject-matter jurisdiction over the claim.

Because SAG-AFTRA has challenged the Court's subject-matter jurisdiction, Plaintiff bears the burden of proving that such jurisdiction exists.  *See Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997).  This he cannot do, because courts uniformly hold that the ADA only encompasses a labor organization's conduct as it relates to its members' employment.  *See Garity v. APWU Nat'l Lab. Org*., 828 F.3d 848, 863 (9th Cir. 2016) (discussing the application of the ADA to labor unions and noting that "the ADA was promulgated to combat discrimination in the workplace"); *see also Brownfield v. Yellow Freight Sys*., 185 F.3d 866, 866 (9th Cir. 1999) (ADA claim asserted against union for allegedly providing plaintiff with inadequate representation to protest his termination of *employment*); *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 740 (9th Cir. 1999) (ADA claim against union viable where it stemmed from member's request for *workplace* accommodations); *Miller v. Sacramento City Unified Sch. Dist*., No. 221CV0757JAMCKDPS, 2021 WL 4806860, at *12 (E.D. Cal. Oct. 14, 2021) (ADA claim against union potentially viable if plaintiff alleged that union discriminatorily failed to resolve her grievances against her *employer*), *report and recommendation adopted*, No. 221CV0757JAMCKDPS, 2021 WL 5165918 (E.D. Cal. Nov. 5, 2021).[4]  Accordingly, because Plaintiff's claim is wholly divorced

---

[4] Duty-of-fair representation claims brought against unions, while not at issue in this case, present a helpful analogue as to the limited reach of the ADA.  Like Title I claims under the ADA, it is well-established that a union's duty of fair representation "extends only to matters involving an employee's *dealings with his employer* and ordinarily does not affect an employee's relationship with the union structure." *United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-CIO*, 770 F.3d 846, 849 (9th Cir. 2014) (emphasis added); *see Muldoon v. Teamsters Loc. 572*, No. CV 22-0161 DSF (JPRX), 2023 WL 3588384, at *4 (C.D. Cal. Apr. 17, 2023) (dismissing duty-of-fair representation claim where allegations

from any employment-related matter, the Court must dismiss the claim for lack of subject-matter jurisdiction. *See Mercer v. Amalgamated Transit Union Div. 689, AFL-CIO*, No. GJH-21-3274, 2023 WL 2213689, at *5 (D. Md. Feb. 24, 2023) (dismissing ADA claim for lack of subject-matter jurisdiction where claim related to union officer election; noting that the court could not find "any cases that interpret [S]ection 12112 of the ADA so broadly as to encompass the internal affairs of labor unions, separate from issues of employment").

### C. Plaintiff fails to state a claim upon which relief can be granted under the ADA.

Even if the Court determines that it has subject-matter jurisdiction over Plaintiff's ADA claim, it must dismiss it for failure to state a claim upon which relief can be granted. Under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal is warranted where a plaintiff's complaint "lacks a 'cognizable legal theory' or sufficient factual allegations to 'support a cognizable legal theory.'" *Beckington v. Am. Airlines, Inc*., 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 652 (9th Cir. 2019)). To meet this standard, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegations,' accepted as true, to state 'a plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). The allegations "must be enough to raise a right to relief above the speculative level." *In re NVIDIA Corp. Sec. Litig*., 768 F.3d 1046, 1051 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[t]here must be 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

---

related to members' internal relationship with the union, not the employer), *aff'd*, No. 23-55448, 2024 WL 4987247 (9th Cir. Dec. 5, 2024).

1    First, Plaintiff fails to state a Title III claim because he cannot allege

2    that SAG-AFTRA's Voter's Guide is a public accommodation.  To prevail on a

3    Title III claim, a plaintiff must show "(1) he is disabled within the meaning of the

4    ADA; (2) the defendant is a private entity that owns, leases, or operates a place of

5    public accommodation; and (3) the plaintiff was denied public accommodations by

6    the defendant because of his disability."  *Arizona ex rel. Goddard v. Harkins*

7    *Amusement Enterprises, Inc*., 603 F.3d 666, 670 (9th Cir. 2010).  As discussed at

8    length above, SAG-AFTRA's Voter's Guide is not a place of public

9    accommodation, nor is it connected to one.  Absent a threshold showing that his

10    claim implicates a public accommodation, Plaintiff cannot state a claim under Title

11    III of the ADA.   *See, e.g*., *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1213 (9th

12    Cir. 2020) (affirming dismissal of Title III claim under Rule 12(b)(6) where

13    plaintiffs did not plausibly allege that benefit plan was a place of public

14    accommodation); *Stern v. Sony Corp. of Am*., 459 F. App'x 609, 611 (9th Cir.

15    2011) (affirming dismissal of Title III claim under Rule 12(b)(6) where plaintiff

16    failed to allege that Sony's video games were sufficiently connected to a place of

17    public accommodation).

18    Second, Plaintiff has failed to state a plausible claim for relief under

19    Title I of the ADA.  To establish a prima facie case of discrimination under Title I,

20    a plaintiff must show that "[he]: (1) is disabled; (2) is qualified; and (3) suffered an

21    adverse employment action because of [his] disability."  *Garity v. APWU Nat'l*

22    *Lab. Org*., 840 F. App'x 924, 927 (9th Cir. 2020).  The final element requires, at a

23    minimum, facts giving rise to an inference that a defendant "'had a discriminatory

24    intent or motive' in taking an adverse employment action against [the plaintiff]."

25    *Borodaenko v. Twitter, Inc*., No. 22-CV-07226-AMO, 2024 WL 3908104, at *4

26    (N.D. Cal. Aug. 21, 2024) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977,

27    986 (1988)).

28

Plaintiff's Title I claim fails because he did not, and cannot, allege that he suffered an adverse employment action.  As discussed above, the ADA is an employment discrimination statute that requires a showing that an alleged disability discrimination affected an individual's employment.  *See* 42 U.S.C. § 12112(a).  Plaintiff's claim, which concerns an internal union election, does not implicate his employment, and thus fails to allege an adverse employment action necessary to ground a Title I claim.  *Cf. Weeks v. Union Pac. R.R. Co*., 137 F.Supp.3d 1204, 1220 (E.D. Cal. 2015) (noting that employer actions "unaccompanied by an actual adverse effect on compensation, terms, conditions, or privileges of employment do not constitute 'adverse employment actions'").

Further, Plaintiff's claim fails because he does not allege a single fact tending to show that SAG-AFTRA discriminated against him *because of* his disability.  In the Ninth Circuit, a plaintiff bringing an ADA discrimination claim must show that the adverse action would not have occurred but for their disability. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) (joining "sister circuits in holding that ADA discrimination claims under Title I must be evaluated under a but-for causation standard").  Plaintiff's conclusory allegation that SAG-AFTRA's cropping of his photograph was "not a neutral edit but a deliberate removal of his service animal," FAC at 4, ¶ 16, is insufficient to plead that SAG-AFTRA would not have cropped Plaintiff's photograph but for his disability.[5]  *See, e.g.*, *Garity*, 840 F. App'x at 927 (plaintiff's ADA claim failed at step three because she failed to show "direct evidence of discrimination by the union or evidence that the union treated her less favorably than non-disabled, similarly situated

---

[5] Plaintiff's allegation that "at least one non-standard composition was included in a contemporaneous SAG-AFTRA voter guide," FAC at 3, ¶ 13, Ex. D, is inapposite because that referenced photograph was published in the Philadelphia Local Voter's Guide, *id.*, which is irrelevant to a consideration of the LA Local's Voter's Guide, a separate labor organization.

individuals"); *Bruce v. Becerra*, No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867, at *3 (S.D. Cal. May 13, 2025) (granting motion to dismiss disability claim where employer's alleged adverse actions were not "connected to or imposed because of [p]laintiff's disability"); *Borodaenko*, 2024 WL 3908104, at *5 (dismissing disability claims where plaintiff "fail[ed] to allege that others were treated more favorably, that he was singled out in some way, or that his treatment gives rise to an inference of discrimination").

In short, there is not a single, non-conclusory allegation in the FAC that even raises the inference that SAG-AFTRA had a discriminatory motive when it cropped Plaintiff's photo in compliance with its uniform policy.  In any event, even if Plaintiff could set forth a prima facie case, SAG-AFTRA's Election Policy provides a legitimate, nondiscriminatory reason for cropping Plaintiff's photograph.  *See Koch v. California Water Serv. Co*., No. 1:22-CV-01333-KES-CDB, 2024 WL 4753850, at *10 (E.D. Cal. Nov. 12, 2024) (granting motion to dismiss ADA claim where, *inter alia*, plaintiff was terminated for legitimate reason of failing to comply with employer's policy), *report and recommendation adopted*, No. 1:22-CV-01333-KES-CDB, 2025 WL 732815, at *4 (E.D. Cal. Mar. 7, 2025).

Finally, Title I of the ADA requires complainants to first file a charge with the Equal Employment Opportunity Commission ("EEOC").  *See* 42 U.S.C. § 12117(a); *Zimmerman v. Oregon Dep't of Just*., 170 F.3d 1169, 1172 (9th Cir. 1999) ("Title I [of the ADA] requires an employee first to file a charge with the EEOC in a timely manner.").  Because Plaintiff has failed to establish that he met this requirement, his ADA claim should be dismissed.  *See Muhammad v. Carvalho*, No. 2:23-CV-10232-SPG-E, 2024 WL 4766193, at *3–5 (C.D. Cal. Nov. 4, 2024) (dismissing Title I ADA claim seeking declaratory and injunctive relief for, *inter alia*, failure to exhaust administrative remedies).

III.    **PLAINTIFF'S STATE-LAW CLAIMS FAIL.**

A.    **The Court should not exercise supplemental jurisdiction over Plaintiff's state-law claims.**

This Court should not exercise supplemental jurisdiction over Plaintiff's state-law FEHA, CDPA, and IIED claims.  As set forth above, the Court does not have subject-matter jurisdiction over Plaintiff's Title III ADA claim due to his lack of standing and failure to allege an imminent future injury; it lacks subject-matter jurisdiction over Plaintiff's Title I ADA claim because Title I does not apply to claims regarding internal union election conduct.  Thus, this Court cannot exercise supplemental jurisdiction over Plaintiff's state-law claims.  *See Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("[W]here there is no underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims."); *Whitaker v. Yard House*, No. SACV192290JVSJDEX, 2020 WL 3805807, at *3 (C.D. Cal. Mar. 23, 2020) ("[W]here a Court lacks Article III jurisdiction over a plaintiff's ADA claim for lack of standing, the Court has no discretion to retain supplemental jurisdiction over the plaintiff's remaining state law claims.").

Alternatively, even if the Court had jurisdiction to consider Plaintiff's ADA claim, because the ADA claim is patently unmeritorious, it should decline to exercise supplemental jurisdiction over the state-law claims.  *See Oliver v. Ralphs Grocery Co*., 654 F.3d 903, 911 (9th Cir. 2011) (district court did not err when it declined to exercise jurisdiction over state-law claims, including CDPA claim, after dismissing ADA claim); *Miersch*, 2022 WL 1271009, at *2–3 (declining to exercise supplemental jurisdiction over state-law disability claim after dismissing ADA claim).

17

### B.    Plaintiff fails to state a claim under state law.

Even if this Court were to exercise supplemental jurisdiction over Plaintiff's state-law claims, Plaintiff nonetheless fails to state a claim on the merits of his FEHA, CDPA, and IIED claims.

First, Plaintiff fails to state a claim under FEHA for substantially the same reasons that his ADA claim is deficient.  Similar to the ADA, to establish a prima facie case of disability discrimination under FEHA, a plaintiff must show he "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability."  *Walls v. Kiewit Corp.*, No. CV198319PSGJEMX, 2019 WL 8685070, at *2 (C.D. Cal. Dec. 17, 2019) (cleaned up).  The third element requires a showing that the disability was a "substantial motivating factor" in the alleged adverse action.  *Id.*; *see also Harris v. City of Santa Monica*, 294 P.3d 49, 66 (Cal. 2013) (discussing the purpose of FEHA's substantial-motivating pleading standard, and noting that this standard, "rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision").

As with his Title I ADA claim, Plaintiff has not alleged that his disability was a "substantial motivating factor" in the application of SAG-AFTRA's cropping policy.  The FAC contains no allegations whatsoever to suggest that SAG-AFTRA was motivated by Plaintiff's disability—let alone *substantially* motivated—when it cropped the photograph he submitted pursuant to its uniform policy.  *See, e.g.*, *Burtt v. Sunnova Energy Corp.*, No. 2:22-CV-02754-RGK-PD, 2022 WL 3574297, at *2 (C.D. Cal. June 22, 2022) (conclusory allegation that plaintiff's termination was motivated "at least in part" by disability insufficient to state a FEHA claim); *Quesada v. Albertson's LLC*, No. SACV201407PSGDFMX,

1   2022 WL 2176512, at *8 (C.D. Cal. Feb. 1, 2022) (plaintiff's FEHA claim failed

2   where he "point[ed] to no evidence of a causal link between his disability or

3   perceived disability and his termination, much less that any disability or perceived

4   disability was a substantial motivating factor for his termination"); *Frausto v. Bank*

5   *of Am., Nat'l Ass'n*, No. SACV191583DOCADS, 2019 WL 8012420, at *5 (C.D.

6   Cal. Dec. 4, 2019) (granting motion to dismiss where allegations failed to "support

7   a reasonable inference that Defendant acted with discriminatory intent"). Again,

8   even if Plaintiff could allege this causal showing, SAG-AFTRA's following its

9   Election Policy is a legitimate, non-discriminatory justification for cropping

10  Plaintiff's photograph. *See Hooker v. Parker-Hannifin Corp.*, No. SACV 11-483-

11  JST EX, 2012 WL 1156437, at *3 (C.D. Cal. Apr. 3, 2012) (FEHA claim failed

12  where application of defendant's policy provided a legitimate, nondiscriminatory

13  reason for termination), *aff'd*, 585 F. App'x 386 (9th Cir. 2014).

14          In addition, FEHA, like the ADA, requires complainants to submit a

15  complaint with a California administrative agency before filing a lawsuit. Cal.

16  Gov. Code §§ 12960, 12965. Because Plaintiff has failed to exhaust his

17  administrative remedies, his FEHA claim must be dismissed. *See Clay v. Pac. Bell*

18  *Tel. Co.*, 639 F. App'x 420, 422 (9th Cir. 2016) (dismissal of FEHA claims against

19  union was proper where the plaintiff failed to exhaust administrative remedies).

20          Second, Plaintiff's CDPA claim fails because the CDPA applies to

21  disabled individuals' access to public accommodations, not to a union's election

22  materials or a dispute between a labor organization and its members. In support of

23  his CDPA claim, Plaintiff cites to Section 54, which outlines a general right for

24  disabled individuals to access public places. *See* Cal. Civ. Code § 54(a). But

25  SAG-AFTRA's Voter's Guide is not akin to the types of "public accommodations"

26  that fall within the scope of the CDPA. *See Cullen v. Netflix, Inc.*, 600 F. App'x

27  508, 509 (9th Cir. 2015) (CPDA claim against Netflix failed because Netflix's

28  services were not connected to a place of public accommodation). Plaintiff also

cites to Section 54.2, which gives individuals with disabilities the "right to be accompanied by a guide dog" in the places enumerated in Section 54.1.  Cal. Civ. Code § 54.2(a).  The places enumerated in Section 54.1 include public accommodations and common carriers such as hospitals, airplanes, schools, hotels, and "other places to which the general public is invited."  *Id.* § 54.1(a).  Nowhere does the statute remotely indicate that an individual with a disability has the right to be featured with a service animal in union election materials.

Third, Plaintiff has failed to state a common-law claim of IIED.  To set forth a prima facie case of IIED under California law, a plaintiff must show the following: "(1) extreme and outrageous conduct by the defendant; (2) with the intention of causing, or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct."  *Bassam v. Bank of Am.*, No. CV 15-00587 MMM FFMX, 2015 WL 4127745, at *8 (C.D. Cal. July 8, 2015).

Plaintiff's allegations that SAG-AFTRA published a headshot of him without his service dog are insufficient to meet the exceptionally high threshold to establish an IIED claim, which requires conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized society."  *Id.* at *10.  Courts have held that conduct of a much more extreme nature than that at issue here does not suffice for an IIED claim.  *See, e.g.*, *Singh v. IKEA Distribution Servs., Inc.*, No. 120CV0975NONEJLT, 2021 WL 1907608, at *7 (E.D. Cal. May 12, 2021) (termination of plaintiff, "even if improperly motivated by his disability and leave" not sufficient to support IIED claim), *report and recommendation adopted*, No. 120CV0975NONEJLT, 2021 WL 6775890 (E.D. Cal. June 16, 2021); *Stambanis v. TBWA Worldwide, Inc.*, No. 219CV03962ODWJEMX, 2020 WL 58733, at *3 (C.D. Cal. Jan. 6, 2020) (allegations that employer, *inter alia*, "ruined [plaintiff's]

professional reputation" and "cut off her health insurance" did not set forth IIED claim).

## IV.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PROPER SERVICE.

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant can move to dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5) ("Rule 12(b)(5)"). Federal Rule of Civil Procedure 4 requires service of a summons and complaint on a defendant. Fed. R. Civ. P. 4(c)(1). Relatedly, this Court's Standing Order requires a plaintiff to "promptly serve the Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant to Fed. R. Civ. P. 4(l)." Dkt. No. 9 at 2–3. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "A plaintiff normally meets this burden by producing the process server's return of service. . . ." *Vogel v. 99 Cents Only Stores, LLC*, No. 2:16-CV-08262-RGK (AFM), 2017 WL 11918001, at *1 (C.D. Cal. Feb. 2, 2017).

Here, Plaintiff has not effectuated proper service of process on SAG-AFTRA. After several requests by Plaintiff for the Clerk of Court to issue summons, summons were finally issued on September 29, 2025. As of the filing of this motion, however, Plaintiff has not yet served the summons and complaint on SAG-AFTRA. Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint."). For this reason, the FAC must be dismissed.[6] *See Kniss v. Booth*,

---

[6] Nor has Plaintiff filed a proof of service, as required by Local Rule 4-6. L.R. 4-6 ("The plaintiff must file a proof of service within 14 days of service of the summons and complaint or receipt of a notice and acknowledgement of service. Failure to file a proof of service timely may result in the imposition of sanctions against the defendant that was the subject of the proof of service.").

No. SACV071215AHSPJWX, 2009 WL 10673238, at *4 (C.D. Cal. Mar. 20, 2009) (holding that plaintiff failed to establish proper service even where defendants had actual notice of the complaint and filed motions to dismiss; noting that "such arguments are unpersuasive because actual notice generally is insufficient to overcome plaintiff's burden on a Rule 12(b)(5) motion").

## **CONCLUSION**

For all the foregoing reasons, the Court should grant SAG-AFTRA's Motion to Dismiss and dismiss Plaintiff's First Amended Complaint with prejudice.

Dated:      October 2, 2025
New York, New York

Respectfully submitted,

*/s/ Susan Davis*
Susan Davis (*pro hac vice* admitted)
Olivia R. Singer (Calif. Bar No. 312770)
Kayla Morin (*pro hac vice* admitted)
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022-4869
Tel: (212) 563-4100
sdavis@cwsny.com
*Attorneys for Defendant SAG-AFTRA*

22

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2 of the United States District Court for the Central District of California, the undersigned, counsel of record for Defendant SAG-AFTRA, certifies that this brief contains 6,814 words, which complies with the word limit of L.R. 11-6.1.

Dated:          October 2, 2025
                New York, New York


                                        */s/ Susan Davis*