Susan Davis (*pro hac vice* admitted)
Olivia R. Singer (Calif. Bar No. 312770)
Kayla Morin (*pro hac vice* admitted)
COHEN, WEISS and SIMON LLP
909 Third Avenue, 12th Floor
New York, New York 10022-4869
Tel: (212) 563-4100
sdavis@cwsny.com
*Attorneys for Defendant SAG-AFTRA*

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

------------------------------------------------------------x

ALEXANDER DOUGLAS PLANK,

              *Plaintiff*,

- v. -

SAG-AFTRA,

              *Defendant*.

------------------------------------------------------------x

Case No.
25-cv-07523 (AB) (SSC)

**DECLARATION OF OLIVIA R. SINGER RE: COMPLIANCE WITH L.R. 7-3 AND IN SUPPORT OF SAG-AFTRA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Hearing Date:** October 31, 2025
**Time:** 10:00 a.m.
**Judge:** Hon. André Birotte Jr.
**Courtroom:** 7B

Pursuant to Local Rule 7-3, Defendant SAG-AFTRA respectfully submits the following declaration of counsel demonstrating its efforts to meet and confer with Plaintiff Alexander Douglas Plank.

1

Declaration of Olivia R. Singer re: Compliance with L.R. 7-3 and in Support of SAG-AFTRA'S Motion to Dismiss Plaintiff's First Amended Complaint

# DECLARATION OF OLIVIA R. SINGER

I, Olivia R. Singer, under penalty of perjury, and in lieu of an affidavit as permitted by 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information and belief.

2. I am an attorney in the law firm Cohen, Weiss and Simon LLP, which serves as counsel to Defendant SAG-AFTRA in this case.

3. I make this declaration in support of SAG-AFTRA's Motion to Dismiss and to demonstrate SAG-AFTRA's good faith efforts to meet and confer with Plaintiff prior to filing the Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").

4. On September 24, 2025, I met with Plank via a Zoom videoconference for approximately forty minutes.

5. I explained that SAG-AFTRA's anticipated motion to dismiss would generally rely on the arguments SAG-AFTRA made in response to Plaintiff's various motions. I then set forth the anticipated bases for the motion to dismiss.

6. First, I explained that SAG-AFTRA plans to move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted.

7. As to Plaintiff's claim under the Americans with Disabilities Act ("ADA"), I explained that SAG-AFTRA contends that the FAC fails to state a claim upon which relief can be granted under Rule 12(b)(6). Specifically, Plaintiff's claim under Title III of the ADA fails because the Voter's Guide is not a public accommodation. Plaintiff's claim under Title I of the ADA fails because a cause of action under Title I must relate to terms and conditions of employment,

2

Declaration of Olivia R. Singer re: Compliance with L.R. 7-3 and in Support of SAG-AFTRA'S Motion to Dismiss Plaintiff's First Amended Complaint

which Plaintiff failed to allege.  Furthermore, the FAC fails to allege that Plaintiff suffered an adverse employment action for purposes of Title I, that SAG-AFTRA treated him differently from other members, or that it acted with discriminatory intent—elements that are required to set forth a prima facie case.  Even if the FAC did establish a prima facie case, SAG-AFTRA's uniform cropping policy provides a legitimate basis for the challenged action.  Moreover, I stated that SAG-AFTRA would move to dismiss the ADA claim because Plaintiff had not first exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"), which is required for Title I claims, even when seeking injunctive relief.  Finally, I also advised Plaintiff that any asserted claim under Title II of the ADA would fail because Title II applies to governmental actors, and SAG-AFTRA is a private entity.

8. In response, Plaintiff stated in sum or substance that he was not asserting a traditional employment claim and that he did not believe the exhaustion requirements applied, but that if they did, he would take the necessary steps and refile.  He argued that SAG-AFTRA's actions, as a labor union, fell within the scope of the ADA.

9. As to Plaintiff's claim under the Fair Employment and Housing Act ("FEHA"), I stated that SAG-AFTRA plans to move to dismiss the FEHA claim under Rule 12(b)(6) on grounds similar to those SAG-AFTRA will argue for the ADA, since the Ninth Circuit applies similar standards to ADA and FEHA claims.   Under FEHA, a plaintiff must show that they experienced an adverse employment action and that their disability was a "substantial motivating factor" in the challenged action.  The FAC does not allege facts showing this, and even if it did, the uniform cropping policy serves a legitimate, non-discriminatory purpose.  Additionally, like the ADA, Plaintiff has failed to comply with FEHA's administrative exhaustion requirement.

10. In response, Plaintiff stated in sum or substance that he disagreed for the same reasons he disagreed with SAG-AFTRA's positions with respect to his ADA claims.

11. As to Plaintiff's claim under the California Disabled Persons Act ("CDPA"), I explained that SAG-AFTRA planned to move to dismiss under Rule 12(b)(6) on the bases set forth in its opposition to Plaintiff's motion for a temporary restraining order and motion for a preliminary injunction. Specifically, the statute applies to disabled individuals' access to public accommodations, not to a union's election materials or a dispute between a labor organization and its members. Therefore, the FAC does not state a plausible claim for relief.

12. In response, Plaintiff stated in sum or substance that he did not agree with SAG-AFTRA's interpretation of the CDPA.

13. As to Plaintiff's intentional infliction of emotional distress ("IIED") claim, I explained that SAG-AFTRA planned to move to dismiss the claim under Rule 12(b)(6). I stated that a plaintiff bringing an IIED claim must show (1) extreme and outrageous conduct by the defendant; (2) with the intention of causing, or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. I then stated that SAG-AFTRA will argue that the FAC does not allege facts that meet this standard.

14. In response, Plaintiff stated in sum or substance that he disagreed and said that from his point of view, SAG-AFTRA's conduct was extreme and outrageous.

15. Next, I stated that SAG-AFTRA plans to move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of subject-matter jurisdiction.

4

16. I explained that SAG-AFTRA planned to move to dismiss the ADA claim on the grounds that the Court does not have subject-matter jurisdiction over Plaintiff's Title I claim. I stated that SAG-AFTRA intends to argue that Title I is limited to claims against labor organizations that have a relationship to a member's employment, and therefore, there is no cause of action concerning an internal union election. Additionally, I conveyed that SAG-AFTRA plans to assert that Plaintiff lacks standing to pursue a Title III claim because the Voter's Guide is not a place of public accommodation, and therefore the Court lacks subject-matter jurisdiction over the Title III claim. Furthermore, to have standing to sue for injunctive relief under Title III, a plaintiff must allege a real and immediate threat of repeated injury in the future. Because SAG-AFTRA adopts a new Election Policy for each election cycle and has offered to consider Plaintiff's recommended revision, SAG-AFTRA will argue that the FAC does not plausibly allege an imminent threat of repeated injury.

17. In response, Plaintiff stated in sum or substance that SAG-AFTRA had only offered to consider his recommended revision, and that the cropping policy might continue in the future.

18. Next, I conveyed that because the Court lacked subject-matter jurisdiction over the federal ADA claim, SAG-AFTRA would argue that the Court could not exercise supplemental jurisdiction over Plaintiff's state-law claims. In the alternative, I conveyed that SAG-AFTRA would argue that the Court should decline to exercise its discretion to exercise supplemental jurisdiction over the state law claims.

19. Moreover, I explained that SAG-AFTRA intends to argue that Plaintiff's entire FAC is moot and therefore must be dismissed under Rule 12(b)(1). The FAC is moot for various reasons, including that Voter's Guide has been mailed out, the election is over, Plaintiff won the positions he ran for, and

SAG-AFTRA develops a new Nominations & Election Policy for each election cycle. The Court therefore lacks jurisdiction because there is no present controversy.

20. In response, Plaintiff stated in sum or substance that the Voter's Guide was still on SAG-AFTRA's website and that, even if the Voter's Guide is taken down, people have already seen it.

21. Next, I stated that SAG-AFTRA intended to move to dismiss the FAC under either Federal Rule of Civil Procedure 12(b)(5) or Federal Rule of Civil Procedure 12(b)(4) for insufficient service of process or insufficient process. I explained that it appeared from the docket that Plaintiff had requested summons, but no summons have been issued. Therefore, Plaintiff has been unable to serve the summons and complaint as required by Federal Rule of Civil Procedure 4. I also stated that Plaintiff had also not filed proof of service as required by Local Rule 4-6. I conveyed that SAG-AFTRA would move to dismiss the FAC on these bases.

22. In response, Plaintiff stated in sum or substance that he planned to revise and resubmit his request for summons.

23. Finally, Plaintiff and I discussed a potential settlement of this matter and held an additional call the next day to further discuss settlement, but we were unable to reach a resolution.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed at New York, New York, this 2nd day of October 2025.

Olivia R. Singer

Declaration of Olivia R. Singer re: Compliance with L.R. 7-3 and in Support of SAG-AFTRA'S Motion to Dismiss Plaintiff's First Amended Complaint