c/o Arise Artists Agency
PO Box 930
Manhattan Beach, CA 90267
Phone: (703) 966-8504
Email: alex@alexplank.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER DOUGLAS PLANK, <br><br> Plaintiff, <br><br> vs. <br><br> SAG-AFTRA <br><br> Defendant | Case No.: 2:25-cv-07523-AB-SSCx <br><br> **SECOND AMENDED COMPLAINT** <br><br> (1) Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. <br><br> (2) California Disabled Persons Act, Cal. Civ. Code §§ 54–55.3 <br><br> (3) Fair Employment and Housing Act, Cal. Gov't Code § 12900 et seq. <br><br> (4) Intentional Infliction of Emotional Distress |

## INTRODUCTION

1. Plaintiff Alexander Douglas Plank ("Plaintiff") brings this action to enjoin Defendant SAG-AFTRA from publishing, mailing, or otherwise distributing a member voter guide that materially alters and crops Plaintiff's photograph to remove his service animal. Defendant's conduct misrepresents Plaintiff's identity and accommodations, and constitutes discrimination under federal and state disability laws.

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims.

4. Defendant is a 'covered entity' within the meaning of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111(2), as a labor organization engaged in controlling the terms, conditions, and privileges of membership and employment opportunities for its members. See also 42 U.S.C. §§ 12111(4), (5). Accordingly, Defendant is subject to the ADA's prohibition on disability discrimination.

5. Venue is proper in this District under 28 U.S.C. § 1391 because the acts complained of occurred in this District and Plaintiff resides here. Additionally, Defendant maintains substantial operations here.

## PARTIES

6. Plaintiff Alexander Douglas Plank is an individual and a resident of Los Angeles County, California.

7. Defendant SAG-AFTRA is a labor organization and membership union with activities and members in California. Defendant published or prepared for distribution a member voter guide that contains an altered photograph of Plaintiff.

# EXHAUSTION OF REMEDIES

1. Defendant is a labor organization covered by Title I of the ADA. Plaintiff seeks primarily equitable and injunctive relief to prevent ongoing discrimination. Such relief cannot be obtained from administrative agencies and is properly sought in this Court.

2. Plaintiff's claims under FEHA are likewise properly before this Court because the exhaustion requirement does not apply to claims for prospective injunctive relief against ongoing disability discrimination by a labor organization.

3. Plaintiff has not filed an administrative charge because agencies such as the EEOC and the California Civil Rights Department cannot order Defendant to cease discriminatory publication practices or correct official voter guides.

4. To the extent damages claims under Title I of the ADA or FEHA are deemed subject to administrative exhaustion, Plaintiff preserves those damages and will amend upon issuance of a right-to-sue notice; his equitable and declaratory claims proceed independently.

5. Accordingly, no administrative exhaustion requirement bars Plaintiff's claims for the prospective relief sought herein.

6. Plaintiff's equitable and declaratory claims proceed regardless of administrative exhaustion, and any damages claims are pled in the alternative

# FACTUAL ALLEGATIONS

8. In July 2025, Plaintiff submitted a photograph to SAG-AFTRA for inclusion in its official Voter Guide. The photograph depicted Plaintiff alongside his service animal. [Exhibit A.]

9. On August 8, 2025, Plaintiff discovered that the photograph included in the voter guide had been altered so that Plaintiff's service animal was cropped out. [Exhibit B.]

10. On the same day, Plaintiff notified SAG-AFTRA of his objection to the alteration via email, requesting correction or withdrawal. [Exhibit C.] He specifically asked when the voter guide was going to be distributed.

11. In response, SAG-AFTRA stated that "all photos submitted for the Voter's Guide must be a headshot of the candidate," represented that "all candidate photos have been cropped to comply with this Rule," and further advised that the guide was scheduled to mail on August 13, 2025, and could not be recalled once mailed. [Exhibit C.]

12. On information and belief, SAG-AFTRA prepares and disseminates an official Voter Guide for each election cycle that includes candidate names, offices sought, and photographs, and distributes that guide to all eligible voters by mail and by posting a digital copy on its website. The Voter Guide is the union's primary, official election communication and is relied upon by members when evaluating candidates.

13. Other headshots in the same guide were not cropped to the same degree. On information and belief, at least one non-standard composition was permitted in a contemporaneous voter guide, where a candidate's image was presented in a stylized format—including a side profile embedded within a coin and a superimposed arrow graphic—demonstrating that the supposed uniform "headshot" rule is not applied consistently. [Exhibit D.]

14. Plaintiff is disabled and relies on a service animal as a disability accommodation. The service animal is trained to monitor Plaintiff's breathing patterns and to alert by pawing at him to indicate a medical episode, allowing Plaintiff to take appropriate action. The visible presence of the service animal in his submitted headshot reflects that accommodation and is part of Plaintiff's identity as a disabled performer.

15. Cropping Plaintiff's service animal from his official election photo materially misrepresented his submitted image and treated his disability-related accommodation differently from non-disability features allowed in other candidate photos, resulting in unequal presentation in the union's official election materials.

16. Defendant's cropping was not a neutral edit but a deliberate removal of Plaintiff's service animal—a visible disability accommodation. This act communicated stigma and exclusion to thousands of members who received or viewed the guide and caused Plaintiff substantial emotional distress.

Second Amended Complaint

4

17. As of the filing of this Amended Complaint, Defendant continues to publish the altered voter guide, including on its official website (sagaftra.org), where it remains accessible to union members as well as the general public. The continued availability of the cropped image perpetuates the stigmatization of Plaintiff's disability identity and presents a real and immediate threat that similar discriminatory practices will recur in future union elections.

18. Plaintiff intends to continue running for union office and submitting photographs for inclusion in SAG-AFTRA's official voter guides in future election cycles. Defendant's discriminatory cropping practice presents a real and immediate threat that Plaintiff's disability accommodation will again be erased.

19. The alteration materially misrepresents Plaintiff's identity and denies visibility of his necessary accommodation, removing his identification as a disabled actor from the materials that SAG-AFTRA voters and industry professionals rely upon, thus causing irreparable dignitary, reputational, and emotional harm.

20. Within the entertainment industry, headshots are the principal tool by which actors and performers secure employment. Union voter guides are distributed not only to members but are also viewed by casting professionals, producers, and other industry stakeholders who use them to identify emerging or notable performers.

21. During production of an independent short film Plaintiff was hired to perform in, the producer directed the camera crew to frame the shot so as to exclude Plaintiff's service animal, citing a provision in the applicable SAG-AFTRA agreement restricting animals on set. This directive was issued despite the director's expressed preference that the service animal remain visible in the scene. Although filming continued, the decision significantly extended setup time and caused visible professional embarrassment to Plaintiff. The incident demonstrated how misunderstandings of union policy can directly affect Plaintiff's working conditions and ability to perform.

22. By cropping Plaintiff's service animal from his official union photograph, Defendant reinforced and legitimized that misunderstanding—signaling to industry professionals that Plaintiff's service animal may be considered impermissible under union practice—and thereby foreseeably impairing Plaintiff's future employment opportunities and reasonable accommodations while on the job.
23. Due to the publication of the altered photograph, at least one past and potential future employer of Plaintiff involved in the previously mentioned production shared that they had voted in this election and had seen the cropped headshot, resulting in confusion about whether Plaintiff was permitted by SAG policy to have his service animal on set or whether he was forbidden from doing so.
24. That confusion affected the employer's understanding of what was permitted on set. When SAG cropped out Plaintiff's service animal, it reinforced the misunderstanding that it was okay to exclude Plaintiff's service animal from work sites in the future (as this employer had done in the past).
25. Defendant's discriminatory alteration of Plaintiff's headshot materially and foreseeably affects Plaintiff's employment opportunities, and, on information and belief, has had a direct impact on Plaintiff's employment with specific employers.
26. It is understood within the entertainment industry—and by SAG-AFTRA itself—that official union voter guides are often reviewed by producers, casting directors, and other potential employers. While much of this is due to the common practice of actors producing and directing projects (and thus seeing the guide due to being a part of the voting membership), stakeholders routinely monitor the guides to identify or evaluate performers. As a result, the alteration of Plaintiff's image had foreseeable effects unrelated to internal union politics, reaching potential employers who viewed the cropped photograph and expressed confusion about why Plaintiff's service animal had been removed.
27. SAG-AFTRA has not removed the altered voter guide from its official website. As of the filing of this action, the guide containing Plaintiff's altered photograph remains

publicly accessible on SAG-AFTRA's website and continues to be distributed to the general public, resulting in ongoing publication of the altered image. Defendant has not disavowed the practice of cropping disability-related features and is likely to repeat this conduct in future election cycles.

28. As a direct result of Defendant's actions, Plaintiff has refrained from participating in certain union activities and communications, including online forums and local events, due to the stigma of the altered photograph. Unless enjoined, Defendant's discriminatory practices will continue to deter Plaintiff's full and equal participation in union life.

29. Plaintiff's claims do not seek to overturn or alter the outcome of any SAG-AFTRA election. Nor do they challenge election procedures governed by Title IV of the Labor-Management Reporting and Disclosure Act. Plaintiff instead challenges discriminatory alteration of his photograph in official union communications, which constitutes disability discrimination independent of any election outcome or procedure.

30. Plaintiff's injury does not depend on the election outcome. The discriminatory cropping of disability-related features constitutes an ongoing denial of equal access to union communications and stigmatization of disability identity that persists regardless of the election results.

## CLAIMS FOR RELIEF

**COUNT I — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101 ET SEQ.)**

1. Plaintiff realleges the foregoing paragraphs.
2. Defendant's alteration and distribution of the altered photograph constitutes disability discrimination in violation of Title I because, as a labor organization, Defendant affected the terms, conditions, and privileges of Plaintiff's employment and his employment opportunities with actual and prospective employers. 42 U.S.C. § 12112(a). Plaintiff seeks injunctive and declaratory relief, fees, and costs.

3. Defendant is a labor organization within the meaning of Title I of the ADA, 42 U.S.C. § 12111(2), and is therefore prohibited from discriminating against members on the basis of disability
4. The ability to appear accurately in the union's official voter guide is a privilege of union membership. Denying equal participation in that privilege constitutes unlawful discrimination under the ADA.
5. Plaintiff primarily seeks prospective injunctive and declaratory relief under the ADA to prevent ongoing and future disability discrimination, including correction of the altered photograph and changes to Defendant's policies and practices.

**COUNT II — CALIFORNIA DISABLED PERSONS ACT (CAL. CIV. CODE §§ 54, 54.2)**

1. Plaintiff realleges the foregoing paragraphs.
2. Defendant's conduct violates California Civil Code §§ 54 and 54.2 by interfering with Plaintiff's rights as a person with a disability and misrepresenting or denying the presence of a service animal.
3. Plaintiff primarily seeks prospective injunctive and declaratory relief under the CDPA to prevent ongoing disability discrimination, including correction of the altered photograph and changes to Defendant's policies and practices.

**COUNT III — FAIR EMPLOYMENT AND HOUSING ACT (CAL. GOV. CODE § 12940)**

1. Plaintiff realleges the foregoing paragraphs.
2. SAG-AFTRA is a labor organization within the meaning of California Government Code § 12940(c), which expressly prohibits disability discrimination by labor organizations.
3. Defendant's conduct constitutes discrimination within the meaning of FEHA with respect to a labor organization or employer practice.
4. Labor organizations are expressly prohibited from disability discrimination under Cal. Gov't Code § 12940(c), independent of employer status.

5. Plaintiff primarily seeks prospective injunctive and declaratory relief under the FEHA to prevent ongoing disability discrimination, including correction of the altered photograph and changes to Defendant's policies and practices.

6. To the extent damages under FEHA are deemed to require exhaustion, Plaintiff preserves those damages and will amend upon issuance of a right-to-sue notice; his equitable claims proceed independently.

**COUNT IV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1. Plaintiff realleges the foregoing paragraphs.

2. Defendant's deliberate alteration, publication, and threatened distribution of the altered photograph was extreme and outrageous and has caused Plaintiff severe emotional distress.

3. Defendant's cropping of Plaintiff's service animal — a known disability accommodation — from his official election photo, despite Plaintiff's objection and while permitting non-standard photos for other candidates, was intended to stigmatize disability identity and constitutes conduct exceeding all bounds tolerated in a civilized society.

4. Defendant's conduct was outrageous because the cropping was not a routine aesthetic decision but the intentional removal of Plaintiff's service animal from an official union publication. By erasing a disability accommodation in a widely distributed communication, Defendant stigmatized Plaintiff's disability, subjected him to humiliation, and deterred him from full participation in union activities.

5. By deliberately cropping out a service animal while allowing other candidates' personal elements, Defendant intentionally stigmatized disability in a way that exceeds the bounds of decency tolerated in a civilized community.

6. As a direct and proximate result of Defendant's outrageous conduct, Plaintiff has suffered severe emotional distress (Plaintiff has experienced humiliation in his professional community, anxiety, and sleep disturbance as a result) and is entitled to compensatory and punitive damages.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff primarily seeks prospective injunctive and declaratory relief to prevent ongoing and future disability discrimination. Plaintiff also requests that the Court grant the following relief:

A. A preliminary and permanent injunction enjoining Defendant from publishing, mailing, or distributing any member guide or materials containing the altered photograph of Plaintiff and requiring Defendant to correct the photograph and include it in the voter guide;

B. Declaratory relief that Defendant's actions violated the ADA and California law;

C. An order requiring Defendant to preserve and produce original photograph files, editing logs, communications, and production materials related to the guide;

D. A finding that damages cannot remedy the continuing reputational and stigmatic harm from Defendant's discriminatory alteration of Plaintiff's disability identity in widely disseminated official materials, warranting prospective injunctive relief;

E. Compensatory damages, including for emotional distress, to the extent permitted by law;

F. Punitive damages to the extent permitted by law.

G. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 54.3; and Cal. Gov't Code § 12965(b).

H. Such other relief as the Court deems just and proper.

# VERIFICATION

I, Alexander Douglas Plank, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on October 24, 2025 at Los Angeles, California.

*/s/ Alexander Douglas Plank*
Alexander Douglas Plank
c/o Arise Artists Agency
PO Box 930
Manhattan Beach, CA 90267
Phone: (703) 966-8504
Email: alex@alexplank.com