1  Susan Davis (*pro hac vice* admitted)
2  Olivia R. Singer (Calif. Bar No. 312770)
   Kayla Morin (*pro hac vice* admitted)
3  COHEN, WEISS and SIMON LLP
   909 Third Avenue, 12th Floor
4  New York, New York 10022-4731
5  Tel: (212) 563-4100
   sdavis@cwsny.com
6  *Attorneys for Defendant SAG-AFTRA*

7

8          UNITED STATES DISTRICT COURT FOR THE
9            CENTRAL DISTRICT OF CALIFORNIA

10  ----------------------------------------------------------x
                                                  :  Case No.
11                                                :  25-cv-07523 (AB) (SSC)
    ALEXANDER DOUGLAS PLANK,                      :
12                                                :
                                                  :  **MEMORANDUM OF**
13                                                :  **POINTS AND**
                          *Plaintiff*,            :  **AUTHORITIES IN**
14                                                :  **SUPPORT OF SAG-**
                                                  :  **AFTRA'S MOTION TO**
15        - v. -                                  :  **DISMISS PLAINTIFF'S**
                                                  :  **SECOND AMENDED**
16                                                :  **COMPLAINT**
17                                                :
                                                  :
18  SAG-AFTRA,                                    :  **Hearing Date:** December 19,
19                                                :  2025
                          *Defendant*.            :  **Time:** 10:00 a.m.
20                                                :  **Judge:** Hon. André Birotte Jr.
21                                                :  **Courtroom:** 7B
22  ----------------------------------------------------------x

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

FACTS ........................................................................................................ 3

    The 2025 Election ............................................................................. 4

    The Instant Dispute .......................................................................... 5

    Plaintiff's New Allegations ............................................................. 7

ARGUMENT .............................................................................................. 7

I.    PLAINTIFF'S CLAIMS ARE MOOT. ............................................. 7

II.    PLAINTIFF'S ADA CLAIM FAILS. ................................................ 9

A.    Plaintiff's Title I claim is not actionable under the ADA. .............. 9

B.    Plaintiff fails to state a claim upon which relief can be granted under the ADA. .............................................................................. 13

III.    PLAINTIFF'S STATE-LAW CLAIMS FAIL. ............................... 16

    A.    The Court should not exercise supplemental jurisdiction over Plaintiff's state-law claims. ................................................ 16

    B.    Plaintiff fails to state a claim under state law. ...................... 17

IV.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PROPER SERVICE. .................................................................... 20

CONCLUSION ........................................................................................ 21

CERTIFICATE OF COMPLIANCE ....................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashoff v. City of Ukiah*,
   130 F.3d 409 (9th Cir. 1997) ................................................................. 8

*Bassam v. Bank of Am.*,
   No. CV 15-00587 MMM FFMX, 2015 WL 4127745 (C.D. Cal. July 8,
   2015) ......................................................................................................20

*Beckington v. Am. Airlines, Inc.*,
   926 F.3d 595 (9th Cir. 2019) .................................................................13

*Borodaenko v. Twitter, Inc.*,
   No. 22-CV-07226-AMO, 2024 WL 3908104 (N.D. Cal. Aug. 21, 2024)...14, 15

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) .................................................................21

*Brownfield v. Yellow Freight Sys.*,
   185 F.3d 866 (9th Cir. 1999) .................................................................12

*Bruce v. Becerra*,
   No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867 (S.D. Cal. May 13,
   2025) ......................................................................................................15

*Burtt v. Sunnova Energy Corp.*,
   No. 2:22-CV-02754-RGK-PD, 2022 WL 3574297 (C.D. Cal. June 22,
   2022) ......................................................................................................18

*Calhoon v. Harvey*,
   379 U.S. 134 (1964).................................................................................2

*Clay v. Pac. Bell Tel. Co.*,
   639 F. App'x 420 (9th Cir. 2016) ..........................................................19

*Cullen v. Netflix, Inc.*,
   600 F. App'x 508 (9th Cir. 2015) ..........................................................19

*Frausto v. Bank of Am., Nat'l Ass'n*,
   No. SACV191583DOCADS, 2019 WL 8012420 (C.D. Cal. Dec. 4,
   2019) ......................................................................................................18

*Garity v. APWU Nat'l Lab. Org.*,
   828 F.3d 848 (9th Cir. 2016) .................................................................12

*Garity v. APWU Nat'l Lab. Org.*,
   840 F. App'x 924 (9th Cir. 2020).................................................... 14, 15

*Gordon v. Kounalkis*,
No. CV 24-3683-MRA (AS), 2024 WL 5396265 (C.D. Cal. Oct. 30, 2024) ...................................................................................................... 9

*Herman Fam. Revocable Tr. v. Teddy Bear*,
254 F.3d 802 (9th Cir. 2001) ............................................................... 17

*Hooker v. Parker-Hannifin Corp.*,
No. SACV 11-483-JST EX, 2012 WL 1156437 (C.D. Cal. Apr. 3, 2012 ......... 19

*Kniss v. Booth*,
No. SACV071215AHSPJWX, 2009 WL 10673238 (C.D. Cal. Mar. 20, 2009) .................................................................................................. 21

*Koch v. Cal. Water Serv. Co.*,
No. 1:22-CV-01333-KES-CDB, 2024 WL 4753850 (E.D. Cal. Nov. 12, 2024) .................................................................................................. 16

*Koller v. Harris*,
312 F. Supp. 3d 814 (N.D. Cal. 2018) .................................................... 9

*Lujan v. Pac. Mar. Ass'n*,
165 F.3d 738 (9th Cir. 1999) ............................................................... 12

*Mercer v. Amalgamated Transit Union Div. 689, AFL-CIO*,
No. GJH-21-3274, 2023 WL 2213689 (D. Md. Feb. 24, 2023)...................... 13

*Miller v. Sacramento City Unified Sch. Dist.*,
No. 221CV0757JAMCKDPS, 2021 WL 4806860 (E.D. Cal. Oct. 14, 2021) .................................................................................................. 12

*Muhammad v. Carvalho*,
No. 2:23-CV-10232-SPG-E, 2024 WL 4766193 (C.D. Cal. Nov. 4, 2024) ...... 16

*Muldoon v. Teamsters Loc. 572*,
No. CV 22-0161 DSF, 2023 WL 3588384 (C.D. Cal. Apr. 17, 2023).............. 12

*Murray v. Mayo Clinic*,
934 F.3d 1101 (9th Cir. 2019) ............................................................. 15

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,
9 F.4th 1201 (9th Cir. 2021) ................................................................ 7

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ............................................................. 14

*Oliver v. Ralphs Grocery Co.*,
654 F.3d 903 (9th Cir. 2011) ............................................................... 17

*Protectmarriage.com-Yes on 8 v. Bowen*,
752 F.3d 827 (9th Cir. 2014) ................................................................ 8

iii

*Quesada v. Albertson's LLC*,
    No. SACV201407PSGDFMX, 2022 WL 2176512 (C.D. Cal. Feb. 1, 2022) ................................................................................................18

*Razavi v. Coti*,
    No. 17-CV-04341-BLF, 2017 WL 6039677 (N.D. Cal. Dec. 6, 2017) .............17

*Royston v. City of Scottsdale*,
    No. 24-6530, 2025 WL 3110639 (9th Cir. Nov. 6, 2025)...................................15

*Singh v. IKEA Distribution Servs., Inc.*,
    No. 120CV0975NONEJLT, 2021 WL 1907608 (E.D. Cal. May 12, 2021)......20

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) .................................................................................3

*Stambanis v. TBWA Worldwide, Inc.*,
    No. 219CV03962ODWJEMX, 2020 WL 58733 (C.D. Cal. Jan. 6, 2020) ........20

*United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-CIO*, 770 F.3d 846 (9th Cir. 2014) ......................................................................12

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................................3

*Vogel v. 99 Cents Only Stores, LLC*,
    No. 2:16-CV-08262-RGK (AFM), 2017 WL 11918001 (C.D. Cal. Feb. 2, 2017) ....................................................................................................................21

*Walls v. Kiewit Corp.*,
    No. CV198319PSGJEMX, 2019 WL 8685070 (C.D. Cal. Dec. 17, 2019) .......18

*Weeks v. Union Pac. R.R. Co.*,
    137 F. Supp. 3d 1204 (E.D. Cal. 2015) ..............................................................14

*Whitaker v. Yard House*,
    No. SACV192290JVSJDEX, 2020 WL 3805807 (C.D. Cal. Mar. 23, 2020) ....................................................................................................................17

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...............................................................................8

*Zimmerman v. Or. Dep't of Just.*,
    170 F.3d 1169 (9th Cir. 1999) .............................................................................16

**California Cases**

*Harris v. City of Santa Monica*,
    56 Cal. 4th 203 (2013).........................................................................................18

iv

**Federal Statutes**

29 U.S.C.
§ 481 *et seq.* ....................................................................................2, 4

42 U.S.C.
§ 12101 ....................................................................................................1
§ 12112(a) ....................................................................................10, 14
§ 12117(a) ..............................................................................................16

**California Statutes**

Cal. Civ. Code
§ 54(a) ...................................................................................................19

Cal. Gov't Code
§§ 12960, 12965 ...................................................................................19

California Disabled Persons Act, Cal. Civ. Code
§ 54 *et seq.* ............................................................................................1

California Fair Employment and Housing Act, Cal. Gov't Code
§ 12900 *et seq.* ......................................................................................1

**Rules**

29 C.F.R. § 452.69 ......................................................................................4

C.D. Cal. R. 4-6 .........................................................................................21

Fed. R. Civ. P. 4(c)(1) ...............................................................................21

Fed. R. Civ. P. 4(l) .....................................................................................21

Fed. R. Civ. P. 4 .....................................................................................3, 21

Fed. R. Civ. P. 12(b)(1) ................................................................1, 3, 8, 10

Fed. R. Civ. P. 12(b)(5) .................................................................1, 21, 22

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 13

## **PRELIMINARY STATEMENT**

Defendant SAG-AFTRA submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), Dkt. No. 57, under Federal Rule of Civil Procedure 12(b)(1), Federal Rule of Civil Procedure 12(b)(6), and Federal Rule of Civil Procedure Rule 12(b)(5).

As discussed at length in SAG-AFTRA's prior pleadings, Plaintiff challenged a decision made by a union, SAG-AFTRA, pursuant to its established election policies in an internal union election. Notably, the election concluded on September 12, 2025, and Plaintiff was elected to the two positions he was seeking. Plaintiff claims that SAG-AFTRA discriminated against him due to his disability by cropping his photograph in an internal union election guide mailed to union members (the "Voter's Guide") to include only a headshot, a policy that SAG-AFTRA has uniformly applied to every photo submitted by the thousands of candidates who have run for office in the past six election cycles.

In the SAC, Plaintiff brings a federal claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* He also brings state-law statutory claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, and the California Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54 *et seq.*, as well as a common-law claim for intentional infliction of emotional distress ("IIED").

As set forth below, the SAC suffers from numerous defects. *First*, and critically, as this Court held in its order denying Plaintiff's motion for a temporary restraining order ("TRO"), Plaintiff's claims are moot. The Voter's Guide was mailed more than three months ago, the election at issue concluded more than two months ago, Plaintiff *won* both positions for which he sought election, and SAG-AFTRA removed the Voter's Guide from its website. Furthermore, because the SAG-AFTRA National Board adopts new policies for

1

each new election cycle, the disputed policy at issue here is no longer in effect for future election cycles, and therefore the Court cannot grant any meaningful relief. Each of these occurrences alone could be sufficient to moot Plaintiff's claims; collectively, they indisputably eliminate any semblance of a live controversy for this Court to adjudicate.[1]

 *Second*, Plaintiff's sole remaining federal claim under the ADA is deficient on multiple grounds.  While Plaintiff abandoned his Title III (public accommodations) theory in the SAC, his remaining Title I (employment) claim suffers from multiple jurisdictional and merits-based flaws.  Specifically, as to subject-matter jurisdiction, a claim challenging internal union election policies is simply not a viable cause of action under Title I of the ADA, which governs discrimination related to employment.  Furthermore, even if the Court did not lack subject-matter jurisdiction over Plaintiff's ADA claim, the claim fails on the merits.  Plaintiff has not exhausted his administrative remedies—a prerequisite for filing a Title I ADA suit—nor has he alleged an adverse employment action or raised an inference of discriminatory motive.

 *Third*, in light of the non-viability of Plaintiff's ADA claim as to both jurisdiction and on the merits, the Court should decline to exercise supplemental

---

[1] Where, as is the case here, an election has concluded, the U.S. Department of Labor has exclusive jurisdiction over all matters relating to the election under Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA").  29 U.S.C. § 481 *et seq*.  Although Plaintiff alleges that he does not "seek to overturn or alter the outcome of any SAG-AFTRA election," SAC at 7, ¶ 29, the sweep of the Department of Labor's exclusive jurisdiction over post-election relief is broad.  *See Calhoon v. Harvey*, 379 U.S. 134, 140 (1964) ("Reliance on the discretion of the Secretary [of Labor] is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.").

jurisdiction over Plaintiff's state-law FEHA, CDPA, and IIED claims.  In any event, like his ADA claim, Plaintiff's state-law claims are wholly without merit because Plaintiff cannot allege that SAG-AFTRA discriminated against him due to his disability, that SAG-AFTRA denied him access to a public accommodation, or that cropping Plaintiff's photograph in accordance with established policy is the type of extreme and outrageous conduct required to state an IIED claim.

*Finally*, despite his numerous filings, at the time of filing this motion to dismiss, Plaintiff has failed to serve SAG-AFTRA as required by Federal Rule of Civil Procedure 4 and has failed to file proof of service of the SAC.

For all the foregoing reasons and as discussed further below, the Court should dismiss the SAC with prejudice.

### **FACTS**[2]

Defendant SAG-AFTRA is a national labor organization with members in California.  SAC at 2, ¶ 7.  Plaintiff Alexander Douglas Plank is a member of SAG-AFTRA's Los Angeles Local Union ("LA Local"), who ran for and won a seat on the LA Local Board, as well as a Convention Delegate position, in the 2025 SAG-AFTRA LA Local election (the "2025 Election").  SAC, Ex. B at 5, 13;[3] Declaration of Michelle Bennett dated November 21, 2025 ("Bennett

---

[2] The following facts are drawn from the SAC, the exhibits attached to the SAC, and the Declaration of Michelle Bennett in Support of SAG-AFTRA's Motion to Dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (a court may consider documents attached to the complaint on a motion to dismiss); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (a defendant bringing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can "attack the substance of a complaint's jurisdictional allegations" by relying on "affidavits or any other evidence properly before the court").

[3] Citations to exhibits herein refer to the PDF pagination.

Decl.") ¶ 5.   Plaintiff is disabled and relies on a service animal as a disability accommodation.  SAC at 4, ¶ 14.

The 2025 Election

On September 12, 2025, SAG-AFTRA completed its internal election for national officers, National Board members, local officers, Local Board members, and Convention Delegates.  Bennett Decl. ¶ 3.  Internal union elections are highly regulated by the United States Department of Labor, which has exclusive jurisdiction over all post-election disputes pursuant to Title IV of the Labor-Management Reporting and Disclosure Act.  *See* 29 U.S.C. § 481 *et seq.*

Although not required by Title IV or its regulations, SAG-AFTRA prepares and distributes to eligible voters,[4] at its own expense, a Voter's Guide, which contains a headshot and a 100-word statement from each candidate.  SAC at 4, ¶ 12, Ex. B; Bennett Decl. ¶ 4.  Where a union "distributes any candidate's literature without charge . . . , all other candidates are entitled to have their literature distributed *on the same basis*."  29 C.F.R. § 452.69 (emphasis added).  As is relevant here, SAG-AFTRA's Nominations and Elections Policy ("Election Policy"), along with a set of candidate instructions, "specif[ies] that all photos submitted for the [V]oter's [G]uide must be a headshot of the candidate."  SAC, Ex. C at 2–3 (Bennett email to Plank stating that "the photo was cropped only to align with SAG-AFTRA's Nominations & Elections Policy and the candidate instructions"); *see also* SAC at 4 ¶ 11 ("SAG-AFTRA stated that 'all photos submitted for the Voter's Guide must be a headshot of the candidate[]' [and] represented that 'all candidate photos have been cropped to comply with this [r]ule'").

---

[4] SAG-AFTRA does not mail the Voter's Guide to employers.  Bennett Decl. ¶ 4.

<u>The Instant Dispute</u>

In July 2025, Plaintiff submitted a photograph that "depicted Plaintiff alongside his service animal" to SAG-AFTRA for inclusion in its Voter's Guide for the 2025 Election. *Id.* at 3, ¶ 8. On August 8, 2025, Plaintiff alleges that he discovered that the photograph included in the Voter's Guide "was altered" such that Plaintiff's "service animal was cropped out." *Id.* ¶ 9. That same day, through an email to Michelle Bennett, Plaintiff "notified SAG-AFTRA of his objection to the alteration" of his photograph and requested "correction or withdrawal." *Id.* ¶ 10. Plaintiff stated that he had "hoped to use [his] position on the board to advocate for disabled performers, especially those with service animals." *Id.*, Ex. C at 3.

Plaintiff's 100-word statement, however, which accompanied his photograph in the Voter's Guide, clearly set forth his position on this issue:

> Once elected, I will be the only member of leadership with a service dog. As an autistic actor and disability rights activist, I have a passion for improving things for marginalized performers. Having served as a strike captain and on the performers with disabilities and communications committees, I'm excited to continue to work to bring SAG-AFTRA into the modern era by increasing our union organizing efforts, building solidarity, and improving future negotiations so that our members have opportunities in a rapidly changing world. **TheCoalition2025.org**

*Id.*, Ex. B at 5.

Bennett sent Plaintiff an email shortly thereafter, stating:

> Thank you for reaching out to me. I want to assure you that the Union does not stand for disability erasure and that the photo was cropped only to align with SAG-AFTRA's Nominations & Election Policy and the candidate instructions which specify that all photos submitted for the voter's guide must be a headshot of the candidate. . . .
>
> We are always open to suggestions for improving the

5

> Union's rules and policies. We will certainly add this to the list of recommendations to be considered and approved for future election cycles.

*Id.*, Ex. C at 2–3.

As reflected in Bennett's email, because the SAG-AFTRA National Board adopts a new Election Policy prior to each election cycle, the 2025 Election Policy is no longer in effect for future election cycles. Bennett Decl. ¶ 6. Prior to presenting a new Election Policy for National Board approval in each election cycle, SAG-AFTRA staff reviews suggestions for changes to its Election Policy and related procedures. *Id.* Bennett added Plaintiff's suggestion about including service animals in campaign photos to the list of recommendations to be considered for the 2027 election cycle. *Id.*

Plaintiff responded to Bennett on August 8, 2025, again protesting the cropping of his service animal from his photograph and asking when the Voter's Guide was being mailed. SAC, Ex. C at 2. Bennett advised Plaintiff on August 12, 2025 that the Voter's Guide was being mailed the next day, and stated:

> [T]he photo was cropped only to align with SAG-AFTRA's Nominations & Election Policy and the candidate instructions, which specify that all photos submitted for the Voter's Guide must be a headshot of the candidate. All candidate photos have been cropped to comply with this Rule. The Election Committee does not have the authority to make any exceptions to the rules set forth in the SAG-AFTRA Nominations and Election Policy; it only has the authority to determine whether the candidate requirements have been met.

*Id.* SAG-AFTRA mailed the Voter's Guide on August 13, 2025. SAC at 4, ¶ 11.

The 2025 Election concluded on September 12, 2025, and Plaintiff won a seat on the LA Local Board and a Convention Delegate position. Bennett Decl. ¶¶ 3, 5. Thereafter, on September 17, 2025, SAG-AFTRA removed the Voter's Guide for the LA Local from its website, and all of the voter guides were then deleted from the website on September 25, 2025. *Id.* ¶ 7.

Plaintiff's New Allegations

The SAC offers several new allegations in an effort to tie Plaintiff's employment to SAG-AFTRA's cropping of his headshop in accordance with its policies and procedures.[5]  Specifically, following the mailing of the Voter's Guide, Plaintiff alleges that during the production of a film he was hired to perform in, the producer "directed the camera crew to frame the shot so as to exclude Plaintiff's service animal, citing a provision in the applicable SAG-AFTRA agreement restricting animals on set."  SAC at 5, ¶ 21.  Plaintiff further alleges that "at least one past and potential future employer . . . had seen the cropped headshot, resulting in confusion about whether Plaintiff was permitted by SAG policy to have his service animal on set."  *Id*. at 6, ¶ 23.  He alleges that the alteration of his headshot "materially and foreseeably affects Plaintiff's employment opportunities, and, on information and belief, has had a direct impact on Plaintiff's employment with specific employers."  *Id*. ¶ 25.

## **ARGUMENT**

## I.    **PLAINTIFF'S CLAIMS ARE MOOT.**

"The case or controversy requirement of Article III deprives federal courts of jurisdiction to hear moot cases."  *Native Vill. of Nuiqsut v. Bureau of Land Mgmt*., 9 F.4th 1201, 1208 (9th Cir. 2021) (cleaned up).  Practically, "[t]his means that, at all stages of the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant that is likely to be redressed by a favorable judicial decision."  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (cleaned up).  Federal courts lack the authority "to effectively remedy a present controversy between the parties where a plaintiff seeks to enjoin an activity that has already occurred" and are unable to "undo that

---

[5] For purposes of this Motion, SAG-AFTRA assumes the truth of these allegations.

action's allegedly harmful effects." *Id.* (internal quotations omitted).  Because a challenge based on mootness implicates a court's threshold power to hear and decide a matter, it is properly raised in a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  When a defendant challenges the Court's subject-matter jurisdiction, a plaintiff bears the burden of establishing that such jurisdiction exists.  *See Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997).

Here, Plaintiff's claims are premised on the 2025 Election and his photograph in the 2025 Voter's Guide.  *See generally* SAC.  However, a number of subsequent events have rendered his case moot, eliminating any live controversy appropriate for judicial resolution.  *First*, as this Court recognized in its order denying Plaintiff's application for a TRO, the Voter's Guide was mailed on August 13, 2025; thus, Plaintiff's request to enjoin the mailing of the Voter's Guide was moot.  Dkt. No. 20 at 3–4.  *Second*, the 2025 Election concluded on September 12, 2025.  Bennett Decl. ¶ 3.  *Third*, Plaintiff was successful in both races in which he ran, winning a seat as Local Board Member and as a Convention Delegate.  *Id.* ¶ 5. *Fourth*, SAG-AFTRA removed the Voter's Guide from its website on September 17, 2025.  *Id.* ¶ 7.  *Finally*, the SAG-AFTRA National Board adopts a new Election Policy prior to each election cycle, and the Union has informed Plaintiff that it will add his suggestion about including service animals in photographs to the list of recommendations to be considered for the 2027 and future election cycles.  *Id.* ¶ 6. As such, this case, which concerns the policy in effect for the 2025 Election, no longer presents a live dispute, and Plaintiff's allegation that he "intends to continue running for union office" cannot resurrect his claims because the disputed Election Policy is no longer in effect for future election cycles.  SAC at 5, ¶ 18.

Accordingly, because there no longer exists a present controversy for this Court to adjudicate, Plaintiff's case is moot, and the Court lacks subject-matter

8

jurisdiction over it. *See Gordon v. Kounalkis*, No. CV 24-3683-MRA (AS), 2024 WL 5396265, at *6–7 (C.D. Cal. Oct. 30, 2024) (claims regarding an election were moot where election at issue had "since concluded" and challenged bills "already expired on their own terms"), *report and recommendation adopted sub nom. Gordon v. Kounalakis*, No. CV 24-03683-MRA (AS), 2025 WL 262162 (C.D. Cal. Jan. 22, 2025); *Koller v. Harris*, 312 F. Supp. 3d 814, 823 (N.D. Cal. 2018) (court could not provide effective declaratory relief, and therefore claim was moot, where the disputed election had "come and gone").

## II.    PLAINTIFF'S ADA CLAIM FAILS.

In his SAC, Plaintiff brings an ADA claim grounded solely in Title I of the statute, which applies to employment claims. Although Plaintiff attempts to revitalize his Title I ADA claim by pleading additional allegations about the Voter's Guide's purported impact on his employment, his ADA claim remains defective for two reasons. *First*, the Court lacks subject-matter jurisdiction over Plaintiff's claim because his new allegations do not establish a connection between SAG-AFTRA's alleged conduct and Plaintiff's employment, and therefore the ADA does not provide a cause of action for Plaintiff's claim. *Second*, Plaintiff fails to state a claim upon which relief can be granted because he has failed to plead that SAG-AFTRA discriminated against him because of his disabilities and has failed to exhaust his administrative remedies.

### A. Plaintiff's Title I claim is not actionable under the ADA.

Under Federal Rule of Civil Procedure Rule 12(b)(1), dismissal is warranted where a court lacks subject-matter jurisdiction over a plaintiff's claims. *See* Fed. R. Civ. P. 12(b)(1). As set forth below, the Court lacks subject-matter jurisdiction over Plaintiff's Title I claim because the claim is not actionable under the ADA, which prohibits disability discrimination related to *employment*, not internal union election matters.

The thrust of Plaintiff's Title I claim appears to be that SAG-AFTRA's application of its cropping policy to his photograph in an internal union publication mailed only to Union members, not to employers, constitutes disability discrimination. *See generally* SAC. Plaintiff's allegations about an internal union election matter, however, are simply not encompassed by Title I, which relates to employment and provides, in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and *other terms, conditions, and privileges of employment*.

42 U.S.C. § 12112(a) (emphasis added). As the plain text of the statute shows, Title I's prohibitions against discrimination exclusively involve employment-related activities such as job applications, hiring, advancement, discharge, compensation, and training. *Id.* Indeed, the catchall phrase at the end of the provision, "other terms, conditions, and privileges *of employment*," reinforces the statute's limited scope. *Id.* (emphasis added). Plaintiff's allegations that SAG-AFTRA discriminated against him in an internal union election publication mailed only to Union members do not relate in any way to his employment, and thus fall well outside the statutory framework of Title I of the ADA. As such, the allegations do not give rise to a federal cause of action, depriving this Court of subject-matter jurisdiction over this claim.

While Plaintiff adds numerous allegations to the SAC attempting to connect the Voter's Guide to his employment, they do not provide a factual or legal basis for his Title I claim. Significantly, Plaintiff's chief example of how SAG-AFTRA's actions purportedly impacted his employment involves a producer excluding Plaintiff's service animal from a camera shot, and in so doing "citing a provision in the applicable *SAG-AFTRA [collective bargaining] agreement restricting animals on set*." SAC at 5, ¶ 21 (emphasis added). This allegation,

however, conflates a provision in a collective bargaining agreement that SAG-AFTRA negotiated with an employer association—one regarding animals on set—with the Voter's Guide, an internal Union publication mailed only to Union members, not to any employers. Because there is not one non-conclusory, non-speculative allegation in the SAC that serves as a basis for even inferring that the Voter's Guide had any impact whatsoever on Plaintiff's employment, there is no viable claim under the ADA.[6]

Even if Plaintiff could somehow show that the cropping of his photograph in the Voter's Guide somehow influenced his employers' conduct in allowing his service animal on set—an allegation with no factual basis whatsoever—that theory, too, would fail. By his own admission, the issue of allowing animals on set is governed exclusively by the collective bargaining agreement between the Union and the employers, not by the Union's internal Election Policy. In short, Plaintiff's claim concerning the cropping of his photograph in the Voter's Guide bears no relationship to the terms of employment with his employers. Thus, his claim is simply not cognizable under Title I of the ADA.

The cases concerning ADA claims brought against unions uniformly involve some sort of alleged joint action (or inaction) between an employer and a union—a fact pattern conspicuously lacking here. *See, e.g.*, *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 860 (9th Cir. 2016) (considering claim that union discriminated in violation of the ADA when it failed to process a union member's grievances about management's refusal to accommodate her disabilities); *Brownfield v. Yellow Freight Sys.*, 185 F.3d 866, 866 (9th Cir. 1999) (ADA claim

---

[6] Plaintiff alleges in a wholly conclusory fashion, for example, that cropping his photograph has the potential of "foreseeably impairing Plaintiff's future employment opportunities," SAC at 6, ¶ 22, and that the cropping "has had a direct impact on Plaintiff's employment with specific employers," *id*. ¶ 25.

asserted against union for allegedly providing plaintiff with inadequate representation to protest his termination of employment); *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 742 (9th Cir. 1999) (ADA claim against union potentially viable where it stemmed from member's request for workplace accommodations from his union and employer); *Miller v. Sacramento City Unified Sch. Dist.*, No. 221CV0757JAMCKDPS, 2021 WL 4806860, at *12 (E.D. Cal. Oct. 14, 2021) (ADA claim against union potentially viable if plaintiff alleged that union discriminatorily failed to resolve her grievances against her employer), *report and recommendation adopted*, No. 221CV0757JAMCKDPS, 2021 WL 5165918 (E.D. Cal. Nov. 5, 2021).[7]

Simply put, even assuming (without any factual basis) that an internal union election publication that was not mailed to any employers somehow influenced an employer's decisions with respect to employment matters, the ADA provides no basis for holding the *union* liable for how an *employer* might react to an internal union publication that is wholly divorced from its members' employment. Accordingly, because Plaintiff's claim is independent from any employment-related matter, the Court must dismiss the claim for lack of subject-matter jurisdiction. *See Mercer v. Amalgamated Transit Union Div. 689, AFL-CIO*, No. GJH-21-3274, 2023 WL 2213689, at *5 (D. Md. Feb. 24, 2023) (dismissing

---

[7] Duty-of-fair representation claims brought against unions, while not at issue in this case, present a helpful analogue as to the limited reach of the ADA. Like Title I claims under the ADA, it is well-established that a union's duty of fair representation "extends only to matters involving an employee's *dealings with his employer* and ordinarily does not affect an employee's relationship with the union structure." *United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-CIO*, 770 F.3d 846, 849 (9th Cir. 2014) (emphasis added); *see Muldoon v. Teamsters Loc. 572*, No. CV 22-0161 DSF (JPRX), 2023 WL 3588384, at *4 (C.D. Cal. Apr. 17, 2023) (dismissing duty-of-fair representation claim where allegations related to members' internal relationship with the union, not the employer), *aff'd*, No. 23-55448, 2024 WL 4987247 (9th Cir. Dec. 5, 2024).

ADA claim for lack of subject-matter jurisdiction where claim related to union officer election; noting that the court could not find "any cases that interpret [S]ection 12112 of the ADA so broadly as to encompass the internal affairs of labor unions, separate from issues of employment").

### B. Plaintiff fails to state a claim upon which relief can be granted under the ADA.

Even if this Court determines that it has subject-matter jurisdiction over Plaintiff's ADA claim, it must dismiss it for failure to state a claim upon which relief can be granted.  Under Federal Rule of Civil Procedure 12(b)(6), dismissal is warranted where a plaintiff's complaint "lacks a 'cognizable legal theory' or sufficient factual allegations to 'support a cognizable legal theory.'" *Beckington v. Am. Airlines, Inc*., 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 652 (9th Cir. 2019)).  To meet this standard, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegations,' accepted as true, to state 'a plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). The allegations "must be enough to raise a right to relief above the speculative level." *In re NVIDIA Corp. Sec. Litig*., 768 F.3d 1046, 1051 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[t]here must be 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff fails to state a plausible claim for relief under Title I of the ADA.  To establish a prima facie case of discrimination under Title I, a plaintiff must show that "[he]: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability." *Garity v. APWU Nat'l Lab. Org*., 840 F. App'x 924, 927 (9th Cir. 2020).  The final element requires, at a minimum, facts giving rise to an inference that a defendant "'had a discriminatory intent or motive' in taking an adverse employment action against [the plaintiff]."

13

*Borodaenko v. Twitter, Inc*., No. 22-CV-07226-AMO, 2024 WL 3908104, at *4 (N.D. Cal. Aug. 21, 2024) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988)).

Plaintiff's Title I claim fails because he did not, and cannot, allege that he suffered an adverse employment action. As discussed above, the ADA is an employment discrimination statute that requires a showing that an alleged disability discrimination affected an individual's employment. *See* 42 U.S.C. § 12112(a). Plaintiff's claim, which concerns an internal union election policy, does not implicate his employment, and thus fails to allege an adverse employment action necessary to ground a Title I claim. *Cf. Weeks v. Union Pac. R.R. Co*., 137 F. Supp. 3d 1204, 1220 (E.D. Cal. 2015) (noting that employer actions "unaccompanied by an actual adverse effect on compensation, terms, conditions, or privileges of employment do not constitute 'adverse employment actions'").

Even if Plaintiff could establish the requisite connection between the ADA claim and his employment, the alleged adverse actions, including "extended setup time" and "professional embarrassment," SAC at 5, ¶ 21, also fall well short of an injury necessary to establish an ADA claim. *See Royston v. City of Scottsdale*, No. 24-6530, 2025 WL 3110639, at *1 (9th Cir. Nov. 6, 2025) (no adverse action where plaintiff experienced humiliation and slight changes to her work environment after employer rescinded her transfer; plaintiff failed to demonstrate an impact on the terms and conditions of her employment).

Further, Plaintiff's claim fails because he does not allege a single fact tending to show that SAG-AFTRA discriminated against him *because of* his disability. In the Ninth Circuit, a plaintiff bringing an ADA discrimination claim must show that the adverse action would not have occurred but for their disability. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) (joining "sister circuits in holding that ADA discrimination claims under Title I must be evaluated under a but-for causation standard"). Plaintiff's conclusory allegation that SAG-

14

AFTRA's cropping of his photograph was "not a neutral edit but a deliberate removal of his service animal," SAC at 4, ¶ 16, is insufficient to plead that SAG-AFTRA would not have cropped Plaintiff's photograph but for his disability.[8] *See, e.g.*, *Garity*, 840 F. App'x at 927 (plaintiff's ADA claim failed at step three because she failed to show "direct evidence of discrimination by the union or evidence that the union treated her less favorably than non-disabled, similarly situated individuals"); *Bruce v. Becerra*, No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867, at *3 (S.D. Cal. May 13, 2025) (granting motion to dismiss disability claim where employer's alleged adverse actions were not "connected to or imposed because of his disability"); *Borodaenko*, 2024 WL 3908104, at *5 (dismissing disability claims where plaintiff "fail[ed] to allege that others were treated more favorably, that he was singled out in some way, or that his treatment gives rise to an inference of discrimination").

In short, there is not a single, non-conclusory allegation in the SAC that even raises the inference that SAG-AFTRA had a discriminatory motive when it cropped Plaintiff's photo in compliance with its uniform policy. In any event, even if Plaintiff could set forth a prima facie case, the uniform application of SAG-AFTRA's Election Policy, which only allows headshots for candidates featured in the Voter's Guide, is premised on a legitimate, nondiscriminatory reason for cropping Plaintiff's photograph. *See Koch v. Cal. Water Serv. Co.*, No. 1:22-CV-01333-KES-CDB, 2024 WL 4753850, at *10 (E.D. Cal. Nov. 12, 2024) (granting motion to dismiss ADA claim where, *inter alia*, plaintiff was terminated for legitimate reason of failing to comply with employer's policy), *report and*

---

[8] Plaintiff's allegation that "at least one non-standard composition was included in a contemporaneous SAG-AFTRA voter guide," SAC at 4, ¶ 13, Ex. D, is inapposite because the referenced photograph still only included a headshot (superimposed on a coin) and was published in the Voter's Guide for the Philadelphia Local, a separate labor organization.

*recommendation adopted*, No. 1:22-CV-01333-KES-CDB, 2025 WL 732815, at *4 (E.D. Cal. Mar. 7, 2025).

Finally, Title I of the ADA requires complainants to file a charge with the Equal Employment Opportunity Commission ("EEOC") prior to filing a complaint in federal court. *See* 42 U.S.C. § 12117(a); *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1172 (9th Cir. 1999) ("Title I [of the ADA] requires an employee first to file a charge with the EEOC in a timely manner."). Because Plaintiff has failed to establish that he met this requirement, his ADA claim should be dismissed. *See Muhammad v. Carvalho*, No. 2:23-CV-10232-SPG-E, 2024 WL 4766193, at *3–5 (C.D. Cal. Nov. 4, 2024) (dismissing Title I ADA claim seeking declaratory and injunctive relief for, *inter alia*, failure to exhaust administrative remedies).

## III.    PLAINTIFF'S STATE-LAW CLAIMS FAIL.

### A.    The Court should not exercise supplemental jurisdiction over Plaintiff's state-law claims.

This Court may not exercise supplemental jurisdiction over Plaintiff's state-law FEHA, CDPA, and IIED claims because the Court does not have subject-matter jurisdiction over Plaintiff's Title I ADA claim. *See Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("[W]here there is no underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims."); *Whitaker v. Yard House*, No. SACV192290JVSJDEX, 2020 WL 3805807, at *3 (C.D. Cal. Mar. 23, 2020) (court lacked discretion to exercise supplemental jurisdiction over state-law claims after dismissing ADA claim for lack of subject-matter jurisdiction).

Alternatively, even if this Court had jurisdiction to consider Plaintiff's ADA claim, because the ADA claim is patently unmeritorious, it should decline to exercise supplemental jurisdiction over the state-law claims. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (district court did not err when it

16

declined to exercise jurisdiction over state-law claims, including CDPA claim, after dismissing ADA claim); *Razavi v. Coti*, No. 17-CV-04341-BLF, 2017 WL 6039677, at *3 (N.D. Cal. Dec. 6, 2017) (declining to exercise supplemental jurisdiction over state-law claims where plaintiff failed to state an ADA claim).

### B. Plaintiff fails to state a claim under state law.

Even if this Court were to exercise supplemental jurisdiction over Plaintiff's state-law claims, Plaintiff nonetheless fails to state a claim on the merits of his FEHA, CDPA, and IIED claims.

*First*, Plaintiff fails to state a claim under FEHA for substantially the same reasons that his ADA claim is deficient. Similar to the ADA, to establish a prima facie case of disability discrimination under FEHA, a plaintiff must show he "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Walls v. Kiewit Corp.*, No. CV198319PSGJEMX, 2019 WL 8685070, at *2 (C.D. Cal. Dec. 17, 2019) (cleaned up). The third element requires a showing that the disability was a "substantial motivating factor" in the alleged adverse action. *Id.*; *see also Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (discussing the purpose of FEHA's substantial-motivating pleading standard, and noting that this standard, "rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision").

As with his Title I ADA claim, Plaintiff has not alleged that his disability was a "substantial motivating factor" in the application of SAG-AFTRA's cropping policy, let alone in any employment decision. The SAC contains no allegations whatsoever to suggest that SAG-AFTRA was motivated by Plaintiff's disability—let alone *substantially* motivated—when it cropped the

17

photograph he submitted pursuant to its uniform policy.  Nor does it allege any credible connection between this action and Plaintiff's employment.  *See, e.g.*, *Burtt v. Sunnova Energy Corp*., No. 2:22-CV-02754-RGK-PD, 2022 WL 3574297, at *2 (C.D. Cal. June 22, 2022) (conclusory allegation that plaintiff's termination was motivated "at least in part" by disability insufficient to state a FEHA claim); *Quesada v. Albertson's LLC*, No. SACV201407PSGDFMX, 2022 WL 2176512, at *12 (C.D. Cal. Feb. 1, 2022) (plaintiff's FEHA claim failed where he "point[ed] to no evidence of a causal link between his disability or perceived disability and his termination, much less that any disability or perceived disability was a substantial motivating factor for his termination"); *Frausto v. Bank of Am., Nat'l Ass'n*, No. SACV191583DOCADS, 2019 WL 8012420, at *5 (C.D. Cal. Dec. 4, 2019) (granting motion to dismiss where allegations failed to "support a reasonable inference that Defendant acted with discriminatory intent").  Again, even if Plaintiff could allege this causal showing, SAG-AFTRA's application of its Election Policy is a legitimate, non-discriminatory justification for cropping Plaintiff's photograph.  *See Hooker v. Parker-Hannifin Corp*., No. SACV 11-483-JST EX, 2012 WL 1156437, at *3 (C.D. Cal. Apr. 3, 2012) (FEHA claim failed where application of defendant's policy provided a legitimate, nondiscriminatory reason for termination), *aff'd*, 585 F. App'x 386 (9th Cir. 2014).

In addition, FEHA, like the ADA, requires complainants to submit a complaint with a California administrative agency before filing a lawsuit.  Cal. Gov't Code §§ 12960, 12965.  Because Plaintiff has failed to exhaust his administrative remedies, his FEHA claim must be dismissed.  *See Clay v. Pac. Bell Tel. Co*., 639 F. App'x 420, 422 (9th Cir. 2016) (dismissal of FEHA claims against union was proper where the plaintiff failed to exhaust administrative remedies).

*Second*, Plaintiff's CDPA claim fails because the CDPA applies to disabled individuals' access to public accommodations, not to a union's policy concerning internal union election materials.  In support of his CDPA claim,

18

Plaintiff cites to Section 54, which outlines a general right for disabled individuals
to access public places. *See* Cal. Civ. Code § 54(a).    But SAG-AFTRA's Voter's
Guide is not akin to the types of "public accommodations" that fall within the
scope of the CDPA. *See Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir.
2015) (CPDA claim against Netflix failed because Netflix's services were not
connected to a place of public accommodation).  Plaintiff also cites to Section 54.2,
which gives individuals with disabilities the "right to be accompanied by a guide
dog" in the places enumerated in Section 54.1.  Cal. Civ. Code § 54.2(a).  The
places enumerated in Section 54.1 include public accommodations and common
carriers such as hospitals, airplanes, schools, hotels, and "other places to which the
general public is invited." *Id.* § 54.1(a)(1).  Nowhere does the statute even
remotely indicate that an individual with a disability has the right to be featured
with a service animal in internal union election materials.

*Third*, Plaintiff has failed to state a common-law claim of IIED.  To
set forth a prima facie case of IIED under California law, a plaintiff must show the
following: "(1) extreme and outrageous conduct by the defendant; (2) with the
intention of causing, or reckless disregard of the probability of causing emotional
distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4)
actual and proximate causation of the emotional distress by defendant's outrageous
conduct." *Bassam v. Bank of Am.*, No. CV 15-00587 MMM FFMX, 2015 WL
4127745, at *8 (C.D. Cal. July 8, 2015).

Plaintiff's allegations that SAG-AFTRA published a headshot of him
without his service dog are insufficient to meet the exceptionally high threshold to
establish an IIED claim, which requires conduct "so extreme as to exceed all
bounds of that usually tolerated in a civilized society." *Id.* at *10.  Courts have
held that conduct of a much more extreme nature than that at issue here does not
suffice for an IIED claim. *See, e.g.*, *Singh v. IKEA Distribution Servs., Inc.*, No.
120CV0975NONEJLT, 2021 WL 1907608, at *7 (E.D. Cal. May 12, 2021)

19

(termination of plaintiff, "even if improperly motivated by his disability and leave" not sufficient to support IIED claim), *report and recommendation adopted*, No. 120CV0975NONEJLT, 2021 WL 6775890 (E.D. Cal. June 16, 2021); *Stambanis v. TBWA Worldwide, Inc.*, No. 219CV03962ODWJEMX, 2020 WL 58733, at *3 (C.D. Cal. Jan. 6, 2020) (allegations that employer, *inter alia*, "ruined [plaintiff's] professional reputation" and "cut off her health insurance" did not set forth IIED claim).

## IV.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PROPER SERVICE.

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant can move to dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5) ("Rule 12(b)(5)"). Federal Rule of Civil Procedure 4 requires service of a summons and complaint on a defendant. Fed. R. Civ. P. 4(c)(1). Relatedly, this Court's Standing Order requires a plaintiff to "promptly serve the Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant to Fed. R. Civ. P. 4(l)." Dkt. No. 9 at 2–3. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "A plaintiff normally meets this burden by producing the process server's return of service. . . ." *Vogel v. 99 Cents Only Stores, LLC*, No. 2:16-CV-08262-RGK (AFM), 2017 WL 11918001, at *1 (C.D. Cal. Feb. 2, 2017).

Here, Plaintiff has not effectuated proper service of process on SAG-AFTRA. After several requests by Plaintiff for the Clerk of Court to issue a summons, a summons was finally issued on September 29, 2025.[9] As of the filing of this motion, however, Plaintiff has not yet served the summons and complaint on SAG-AFTRA. Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a

---

[9] This summons was issued regarding the First Amended Complaint.

copy of the complaint."). For this reason, the SAC must be dismissed.[10] *See Kniss v. Booth*, No. SACV071215AHSPJWX, 2009 WL 10673238, at *4 (C.D. Cal. Mar. 20, 2009) (holding that plaintiff failed to establish proper service even where defendants had actual notice of the complaint and filed motions to dismiss; noting that "such arguments are unpersuasive because actual notice generally is insufficient to overcome plaintiff's burden on a Rule 12(b)(5) motion").

<u><strong>CONCLUSION</strong></u>

For all the foregoing reasons, this Court should grant SAG-AFTRA's Motion to Dismiss and dismiss Plaintiff's Second Amended Complaint with prejudice.

Dated:        November 21, 2025
              New York, New York

                              Respectfully submitted,

                              */s/ Susan Davis*
                              Susan Davis (*pro hac vice* admitted)
                              Olivia R. Singer (Calif. Bar No. 312770)
                              Kayla Morin (*pro hac vice* admitted)
                              COHEN, WEISS and SIMON LLP
                              909 Third Avenue, 12th Floor
                              New York, New York 10022-4731
                              Tel: (212) 563-4100
                              sdavis@cwsny.com
                              *Attorneys for Defendant SAG-AFTRA*

---

[10] Nor has Plaintiff filed a proof of service as required by Local Rule 4-6. C.D. Cal. R. 4-6 ("The plaintiff must file a proof of service within 14 days of service of the summons and complaint or receipt of a notice and acknowledgement of service. Failure to file a proof of service timely may result in the imposition of sanctions against the plaintiff, including but not limited to the dismissal of the defendant that was the subject of the proof of service.").

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2 of the United States District Court for the Central District of California, the undersigned, counsel of record for Defendant SAG-AFTRA, certifies that this brief contains 6,573 words, which complies with the word limit of C.D. Cal. R. 11-6.1.

Dated:      November 21, 2025
            New York, New York


                                        */s/ Susan Davis*