ALEXANDER DOUGLAS PLANK

C/O ARISE ARTISTS AGENCY

PO BOX 930

MANHATTAN BEACH, CA 90267

PHONE: (703) 966-8504

EMAIL: ALEX@ALEXPLANK.COM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Alexander Douglas Plank, | Case No. 2:25-cv-07523-AB-SSC |
|---|---|
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| SAG-AFTRA, | |
| Defendant. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... 4

INTRODUCTION ................................................................................................... 4

I.   FACTS ............................................................................................................ 4

II.   LEGAL STANDARDS .................................................................................. 6

   A.   Rule 12(b)(1) — Mootness and Voluntary Cessation ..................................... 6

   B.   Rule 12(b)(6) — Standard on the Pleadings .................................................. 7

III. DEFENDANT CANNOT MEET ITS BURDEN TO SHOW MOOTNESS ... 7

   A.   The Challenged Conduct Has Not Ceased ..................................................... 7

   B.   The Existence of a Factual Dispute Precludes Dismissal ............................... 8

   C.   Jurisdictional Discovery Is Appropriate ......................................................... 8

IV. SAG-AFTRA'S 'NOT EMPLOYMENT-RELATED' ARGUMENT FAILS 10

   A.   Title I Applies to Unions Acting as Gatekeepers to Employment ................ 10

   B.   Plaintiff's Claims Involve Employment Gatekeeping ................................... 12

   C.   Exhaustion Is Not a Basis for Dismissal at This Stage .................................. 13

CONCLUSION ....................................................................................................... 14

CERTIFICATE OF COMPLIANCE ...................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 7, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 7

*Breininger v. Sheet Metal Workers Int'l Ass'n*, 493 U.S. 67 (1989) ............. 10

*Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019) ........................................ 13

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) ....................... 9

*Lopez v. Pac. Mar. Ass'n*, No. CV 19-5443-GW, 2020 WL 91493
   (C.D. Cal. Jan. 7, 2020) ................................................................................ 1

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201
   (9th Cir. 2021) ...................................................................................... 6, 7, 8

*ProtectMarriage.com v. Bowen*, 752 F.3d 827 (9th Cir. 2014) .................. 6, 7

*Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097 (9th Cir. 2008) ................... 13

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ......................................... 6, 7, 8

*Woods v. Graphic Commc'ns,* 925 F.2d 1195 (9th Cir. 1991) ..................... 10

**Statutes**

42 U.S.C. § 12111 ......................................................................................... 10

42 U.S.C. § 2000e-2 ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ................................................................................... 7

1    Defendant's Motion to Dismiss rests heavily on a factual assertion that is
2    demonstrably incorrect. In support of its mootness argument, Defendant re-submitted
3    a sworn declaration stating that the 2025 Los Angeles Local Voter Guide "was
4    removed" from SAG-AFTRA's website. (Bennett Decl. ¶ 3.) Defendant did so even
5    after Plaintiff alleged in his Second Amended Complaint and in the Local Rule 7-3
6    conference that the opposite was true.

7    Plaintiff's evidence confirms that Defendant's representation is incorrect: the
8    Voter Guide PDF remained publicly accessible at its original URL and continued to
9    be served directly from Defendant's own origin server on dozens of occasions after
10   the date Defendant claims it was removed, including as recently as November 28,
11   2025.

12   Because Defendant's mootness challenge under Rule 12(b)(1) is a factual
13   attack, the Court may consider evidence outside the pleadings and must resolve
14   material factual disputes before ruling. The continued availability of the Guide is a
15   dispositive jurisdictional fact. Defendant bears the burden of establishing mootness
16   and cannot do so based on a factual premise disproved by the record.

17   The misrepresentation also undermines the foundation of Defendant's Rule
18   12(b)(6) arguments. Plaintiff's claims arise from the publication and circulation of the
19   cropped photo in the official voter guide. A voter guide that remains hosted,
20   accessible, and served from Defendant's server is plainly not a "moot" injury, nor is
21   the harm past, speculative, or unredressable. The allegations describe ongoing
22   reputational injury, discrimination based on disability, and unequal participation in the
23   union's electoral process—injuries that are cognizable under the ADA, FEHA, and
24   related state-law causes of action.

25   For these reasons, and as explained below, the Motion to Dismiss should be
26   denied in full.

27                                    **I. FACTS**
28   Plaintiff Alexander Douglas Plank is a longtime member of SAG-AFTRA and

1  was a candidate for elected office within the Los Angeles Local. Plaintiff has a
2  documented disability and uses a trained service animal. As alleged in the SAC,
3  Plaintiff submitted an official candidate photograph depicting himself and his trained
4  service animal, and SAG-AFTRA accepted that photograph without objection. (SAC
5  ¶¶ 8–11.) When publishing the 2025 L.A. Local Voter Guide, SAG-AFTRA removed
6  the service animal entirely, altering Plaintiff's official submission and misrepresenting
7  his disability and disability accommodation. (SAC ¶¶ 14–17.) Plaintiff was not
8  notified of the alteration and did not learn of it until after publication. (SAC ¶ 17.)
9  For the 2025 Los Angeles Local elections, SAG-AFTRA created, compiled, and
10 published the "2025 L.A. Local Voter Guide," which included candidate statements
11 and photographs. As alleged in the SAC, the cropped version of Plaintiff's photograph
12 was distributed to members and published at a publicly accessible SAG-AFTRA
13 URL. (SAC ¶¶ 20–27.) The SAC alleges that the file remained online and publicly
14 accessible after publication, and continued to do so even after Plaintiff raised the issue
15 with SAG-AFTRA. (SAC ¶¶ 17, 27.) Plaintiff did not consent to the alteration and
16 was not informed before or during publication. (SAC ¶ 17.)

17      The Second Amended Complaint alleges that SAG-AFTRA's alteration and
18 publication of the cropped image constitute disability discrimination, stigmatization,
19 and unequal treatment in union political processes. Plaintiff further alleges ongoing
20 harm because the altered image remained online and continued to misrepresent
21 Plaintiff's disability accommodation to the voting membership and to the public.
22 Because the altered Guide remains online, Plaintiff continues to suffer ongoing
23 reputational and professional harm.

24      Defendant's Motion to Dismiss claims the controversy is moot because the
25 Voter Guide "was removed" from its published location. (Bennett Decl. ¶ 3.) But
26 Plaintiff has accessed the same PDF repeatedly since the filing of the SAC, including
27 most recently on November 28, 2025. Each access produced the identical file, as
28 proven by Plaintiff's computing identical cryptographic hash values each time, and

most requests were served directly from SAG-AFTRA's own origin server—not from any content delivery network or cache—indicating that the Guide remains hosted on SAG-AFTRA'S server and available at the original SAG-AFTRA URL.

Plaintiff continues to intend to run in future SAG-AFTRA elections and expects to participate in union political processes governed by the same policies and publication practices that resulted in the discriminatory alteration of his candidate photograph. The continued publication of the altered Guide, combined with the likelihood of recurrence in future election cycles, forms an ongoing, live controversy that is not moot.

## II. LEGAL STANDARDS

**A. Rule 12(b)(1) — Mootness and Voluntary Cessation**

A motion to dismiss for lack of subject-matter jurisdiction may be brought under Rule 12(b)(1), but the defendant bears the burden of establishing mootness. "The case or controversy requirement deprives federal courts of jurisdiction only when the issues presented are no longer 'live.'" *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A case becomes moot only if it is "impossible for a court to grant any effectual relief." *ProtectMarriage.com v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014).

The voluntary cessation doctrine imposes a "formidable burden" on the party asserting mootness: it must show that the challenged conduct "could not reasonably be expected to recur." *Native Village of Nuiqsut v. BLM*, 9 F.4th 1201, 1209 (9th Cir. 2021). Here, Plaintiff's evidence shows the challenged conduct has not ceased. The 2025 L.A. Local Voter Guide remains accessible at the same URL, and Plaintiff has continued to download the identical file after the date on which Defendant claims it was removed. At a minimum, even if Defendant temporarily altered access to the file, the record demonstrates that the Guide was again made available and the challenged conduct recurred.

Whether the disputed conduct has actually ceased is a factual question. A Rule 12(b)(1) attack cannot succeed when the plaintiff presents contrary evidence

demonstrating the ongoing nature of the alleged violation.

**B. Rule 12(b)(6) — Standard on the Pleadings**

On a Rule 12(b)(6) motion, the Court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim survives so long as it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is not appropriate where factual disputes exist—particularly disputes about whether a defendant's misconduct is ongoing. Those issues are not resolved at the pleading stage.

## IV. DEFENDANT CANNOT MEET ITS BURDEN TO SHOW MOOTNESS

A motion to dismiss for lack of subject-matter jurisdiction may be brought under Rule 12(b)(1), but the defendant bears the burden of establishing mootness. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A case becomes moot only if the issues are no longer "live" and it is "impossible for a court to grant any effectual relief whatever to the prevailing party." *ProtectMarriage.com v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014).

Under the voluntary cessation doctrine, a defendant who claims that its own conduct has mooted a case faces a formidable burden. It must show that the challenged conduct could not reasonably be expected to recur. *Native Village of Nuiqsut v. BLM*, 9 F.4th 1201, 1209 (9th Cir. 2021). A defendant cannot manufacture mootness by briefly altering its behavior in the face of litigation and then resuming the same conduct afterward.

**A. The Challenged Conduct Has Not Ceased**

Defendant asserts that the 2025 L.A. Local Voter Guide "was removed" from its website. That assertion is inconsistent with the record. As alleged in the Second Amended Complaint and confirmed by Plaintiff's evidence, the Guide remains publicly accessible at the same URL and has been repeatedly served directly from SAG-AFTRA's own origin server. The SAC expressly alleges the same fact—that the

Guide remained publicly available after publication and after Plaintiff's objections. (SAC ¶¶ 17, 27, 35–38.) Plaintiff documented downloading the identical PDF of the Voter Guide on seventy-four occasions after Defendant claims it was deleted, including in November 2025.

The relevant conduct for mootness purposes is the ongoing availability and publication of the Guide. So long as the Guide remains publicly accessible from SAG-AFTRA's servers, the challenged conduct has not ceased and the alleged injury is ongoing.

Because Defendant cannot show that the Guide has been removed or that the challenged conduct cannot recur, it cannot meet its burden under the voluntary cessation doctrine.

**B. The Existence of a Factual Dispute Precludes Dismissal Under Rule 12(b)(1)**

Whether the Guide was in fact removed, when any removal occurred, whether it was restored, and how SAG-AFTRA handled the file are factual questions. Plaintiff has submitted evidence showing that the same PDF continued to be served from SAG-AFTRA's origin server after the date on which Defendant claims it was deleted. That evidence directly contradicts the factual premise of Defendant's mootness argument.

On a factual Rule 12(b)(1) challenge, the Court may consider evidence outside the pleadings, but it may not simply accept a defendant's declaration over contrary evidence submitted by the plaintiff. Where the parties present conflicting evidence on a jurisdictional fact, dismissal for mootness is improper.

**C. The Ongoing Factual Dispute Makes Limited Jurisdictional Discovery Appropriate**

Because Defendant's mootness argument turns on facts uniquely within its control, limited jurisdictional discovery is appropriate. The Ninth Circuit permits jurisdictional discovery where a defendant's jurisdictional position depends on internal facts such as timing, technical implementation, and internal decision-making that are not available to the plaintiff. See *Laub v. U.S. Department of Interior*, 342

1 | F.3d 1080, 1093 (9th Cir. 2003).

2 |     Here, the key questions include: when and how the Guide file was allegedly
3 | removed; whether it was ever actually deleted from SAG-AFTRA's servers, and if so,
4 | why it was later restored; how long it remained available at the URL; and what
5 | changes, if any, were made to the website and file structure. Those facts are
6 | documented, if at all, in Defendant's server logs, content management system records,
7 | and internal communications.

8 |     Plaintiff has already produced evidence indicating that the Guide remained
9 | available even after Defendant represented that it had been deleted. In light of that
10 | conflict, Defendant cannot rely solely on its own declaration and simultaneously resist
11 | narrowly tailored discovery designed to test the truth of that assertion. Plaintiff
12 | therefore intends to seek limited jurisdictional discovery directed to the availability,
13 | handling, and technical status of the Guide so that the Court will have an accurate
14 | factual record before ruling on mootness. Plaintiff has already emailed defense
15 | counsel to initiate the Local Rule 7-3 conference for that motion.

16 |     SAG-AFTRA's mootness theory hinges entirely on the assertion—repeated
17 | throughout its filings—that "SAG-AFTRA removed the Voter Guide from its website
18 | on September 17, 2025." (Def.'s Mem. at 2, 8.) That assertion is flatly contradicted by
19 | the record. The Second Amended Complaint alleges the Guide remains publicly
20 | accessible, and Plaintiff has submitted evidence showing the PDF is currently online
21 | and publicly reachable through the same SAG-AFTRA servers.

23 |     Because the challenged conduct continues, the case cannot be moot.

25 |     Even if SAG-AFTRA had removed the file (it did not), voluntary cessation
26 | would not moot the case. SAG-AFTRA retains full control over its website and can
27 | repost or re-host election materials at any time. This is precisely the situation where
28 | the Ninth Circuit rejects mootness. *Nuiqsut*, 9 F.4th at 1209 ("Defendant bears a

heavy burden to show conduct cannot reasonably be expected to recur."). The Union does not meet that burden.

Furthermore, SAG-AFTRA's argument that "future elections will use new rules" is irrelevant. Plaintiff challenges the ongoing publication of the 2025 Guide, not a speculative future policy. Courts routinely hold that where a disputed document remains publicly available online, claims are not moot because the harm continues to occur.

Thus:

1. The factual premise of dismissing under Rule 12(b)(1) is false.

2. Mootness cannot be decided in Defendant's favor at this stage.

3. The Court must accept the SAC's allegations as true under Rule 12(b)(6).

4. Evidence contradicting SAG-AFTRA's claims forecloses dismissal under Rule 12(b)(1).

## IV. SAG-AFTRA'S "NOT EMPLOYMENT-RELATED" ARGUMENT MISSTATES THE LAW AND MISCHARACTERIZES PLAINTIFF'S CLAIMS

SAG-AFTRA argues that Plaintiff's ADA Title I claim must be dismissed because "Title I governs only employer conduct" and a union "cannot be liable for how an employer reacts to a union matter." (Def.'s Mem. at 18–19.) This argument fails for multiple reasons.

### A. Title I Applies to Unions When They Act as Gatekeepers to Employment Opportunities

The Supreme Court and Ninth Circuit have long held that labor organizations may be liable under employment discrimination laws when they control access to employment opportunities or otherwise affect a member's employment prospects.

First, 42 U.S.C. § 12111(2) expressly defines "covered entities" to include "labor organizations." The inclusion of labor organizations and joint labor-management committees as covered entities indicates Congress's intent to include the

10
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

aspects of these entities that differ from employers.

While it is true that a union can operate like an employer in relation to union staff, a joint labor-management committee is not an employer, not a union, and often has no direct employer–employee relationship with anyone. Congress knew this when drafting the ADA. And Congress explicitly included these committees as "covered entities" in the same provision listing employers and labor organizations. This demonstrates that Title I is not limited to employer actions and that Congress intended Title I to cover any entity that can affect employment terms and opportunities, even where there is no traditional employment relationship.

Moreover, the structure of SAG-AFTRA's own jointly administered Health Plan illustrates why Defendant's reading of Title I is untenable. SAG-AFTRA's Health Plan is neither an employer nor acting as one; it is a jointly administered labor-management entity that determines members' access to employment-related benefits based on union-governed criteria. Under Defendant's theory, such a plan would fall entirely outside the ADA, yet Congress expressly included "joint labor-management committees" as covered entities under 42 U.S.C. § 12111(2) precisely because these entities exercise significant control over workers' employment conditions and opportunities despite lacking a traditional employer relationship. If Title I were limited to employer conduct, Congress's inclusion of both labor organizations and joint labor-management committees would make no sense.

If Title I required an employer–employee relationship, joint labor-management committees could never be covered—but Congress expressly made them covered. That is dispositive against SAG-AFTRA's argument. To the contrary, Congress expressly intended Title I to reach unions and other non-employer entities when their actions affect members' employment opportunities.

Second, under Title VII, whose enforcement structure Title I mirrors, unions are plainly subject to liability when they "cause or attempt to cause an employer to discriminate," or when they "control or influence access to job opportunities." See 42

U.S.C. § 2000e-2(c); *Breininger v. Sheet Metal Workers,* 493 U.S. 67, 88 (1989); *Woods v. Graphic Communications,* 925 F.2d 1195, 1200 (9th Cir. 1991*).* Courts have applied the same principles to ADA Title I, recognizing that non-employer entities— including unions and hiring-hall administrators—may violate the ADA when their actions directly affect employment opportunities. See, e.g., *Lopez v. Pac. Maritime Ass'n,* 2020 WL 91493 (C.D. Cal. Jan. 7, 2020) (ADA Title I claim allowed to proceed against a non-employer entity that administered a dispatch system and controlled access to jobs).

The statute does not create an immunity for unions simply because they are not the employer. Congress included unions alongside joint labor-management committees because it intended the opposite result.

**B. Plaintiff's Claims Are About SAG-AFTRA's Discriminatory Gatekeeping of Employment Opportunities**

SAG-AFTRA characterizes this lawsuit as involving nothing more than internal union governance, but that description bears no resemblance to the allegations in the Second Amended Complaint. The SAC alleges that SAG-AFTRA disseminated a Voter Guide in which it altered Plaintiff's official candidate photograph by removing his service animal, thereby misrepresenting Plaintiff as a non-disabled candidate. SAG-AFTRA then distributed the altered version to tens of thousands of members and made it publicly available online.

The SAC further alleges that casting directors, talent agents, and other industry employers routinely review and rely on SAG-AFTRA election materials when evaluating performers. (SAC ¶¶ 20–27) By altering Plaintiff's submitted photograph to remove his disability accommodation, SAG-AFTRA conveyed false information that directly harmed Plaintiff's employment prospects and professional reputation, both of which are central to his livelihood as a working actor. (SAC ¶¶ 22–27.) At the pleading stage, these allegations must be accepted as true. *Iqbal*, 556 U.S. at 678.

Unions do not obtain immunity from disability discrimination laws merely

12
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

because the discrimination occurs in an election context. Courts hold unions liable when their actions—whether in elections, credentialing, referrals, or training—impede equal participation or materially affect members' access to employment opportunities. The conduct alleged here did far more than influence internal governance; it affected how industry employers, agents, and casting professionals perceive Plaintiff's disability, professional identity, and availability for work. The SAC also alleges specific instances where this occurred. The SAC describes a specific incident in which an employer, after viewing the cropped voter guide photo, questioned whether Plaintiff's service animal was permitted on set and acted on that misunderstanding. (SAC ¶¶ 21–25.)

This is precisely the type of gatekeeping conduct that brings a labor organization within the scope of ADA Title I.

**C. Defendant's Exhaustion Argument Fails Because Exhaustion Is Not Jurisdictional and Cannot Support Dismissal at This Stage**

SAG-AFTRA argues that Plaintiff's ADA claim must be dismissed because he purportedly failed to exhaust administrative remedies. This argument fails for two independent reasons.

First, in the Ninth Circuit, exhaustion of administrative remedies under Title I of the ADA is not jurisdictional. It is an affirmative defense that cannot be resolved on a Rule 12 motion. See *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1850–51 (2019) (Title VII exhaustion is not jurisdictional); *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (treating failure to exhaust as an affirmative defense under Title VII). The ADA adopts the same enforcement structure. Accordingly, Defendant cannot obtain dismissal under Rule 12(b)(1) or 12(b)(6) based on this argument.

Second, even if exhaustion were at issue, it raises factual questions inappropriate for resolution on a motion to dismiss. Plaintiff's claims should proceed to discovery, not be prematurely terminated on an undeveloped record. For this reason

as well, dismissal is improper.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to Dismiss in its entirety. Defendant has not met its burden under Rule 12(b)(1) to establish mootness, particularly where the challenged conduct has not ceased and Plaintiff has submitted contrary evidence showing the continued public availability of the 2025 L.A. Local Voter Guide. Nor has Defendant shown entitlement to dismissal under Rule 12(b)(6); the Second Amended Complaint states viable claims under the ADA, FEHA, and the California Disabled Persons Act, and none of the asserted defenses defeats those claims as a matter of law.

At a minimum, the existence of factual disputes regarding the status, handling, and accessibility of the Guide precludes dismissal on the present record. Because those facts lie within Defendant's exclusive possession, and because the jurisdictional issues turn on those facts, Plaintiff respectfully submits that limited jurisdictional discovery is appropriate before the Court resolves Defendant's mootness challenge. Plaintiff has already initiated a Local Rule 7-3 conference with Defendant's counsel regarding a forthcoming motion for jurisdictional discovery.

Accordingly, Plaintiff respectfully requests that the Court deny the Motion to Dismiss, permit this action to proceed on the merits, and grant such further relief as the Court deems just and proper.

Dated: November 28, 2025　　　　　　　　　　　Respectfully submitted,
Charlottesville, Virginia　　　　　　　　　　　　 */s/Alexander Douglas Plank*
　　　　　　　　　　　　　　　　　　　　　　　c/o Arise Artists Agency
　　　　　　　　　　　　　　　　　　　　　　　PO Box 930
　　　　　　　　　　　　　　　　　　　　　　　Manhattan Beach, CA 90267
　　　　　　　　　　　　　　　　　　　　　　　Phone: (703) 966-8504
　　　　　　　　　　　　　　　　　　　　　　　Email: alex@alexplank.com

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 11-6.2 of the United States District Court for the Central District of California, the undersigned, counsel of record for Defendant SAG-AFTRA, certifies that this brief contains 3,198 words, which complies with the word limit of C.D. Cal. R. 11-6.1.

Dated: November 28, 2025                                                              */s/ Alexander Douglas Plank*

Charlottesville, Virginia